# EXHIBIT E



370 F.Supp.2d 188                                                                Page 1

370 F.Supp.2d 188
**(Cite as: 370 F.Supp.2d 188)**

**c**
Briefs and Other Related Documents

United States District Court,District of Columbia.
Abdulla Thani Faris **AL-ANAZI**, et al., Petitioners,
v.
George W. BUSH, et al., Respondents.
**Civ.A. No. 05-0345(JDB).**

April 21, 2005.

**Background:** In habeas proceeding brought by
foreign nationals detained in Guantanamo Bay
military prison, detainees moved for a preliminary
injunction requiring government to give detainees'
counsel thirty days' notice prior to transferring the
detainees to any location outside the United States.

3**Holding:** The District Court, Bates, J., held that
detainees were not entitled to preliminary injunction.

Motion denied.

West Headnotes

**[1] Injunction 212 ⚖138.1**

212 Injunction
    212IV Preliminary and Interlocutory Injunctions
      212IV(A) Grounds and Proceedings to
Procure
        212IV(A)2 Grounds and Objections
          212k138.1 k. In General. Most Cited
Cases
To prevail on a motion for a preliminary injunction,
petitioners must demonstrate: (1) a substantial
likelihood of success on the merits, (2) that they
will suffer irreparable harm absent the relief
requested, (3) that other interested parties will not
be harmed if the requested relief is granted, and (4)
that the public interest supports granting the

requested relief.

**[2] Injunction 212 ⚖132**

212 Injunction
    212IV Preliminary and Interlocutory Injunctions
      212IV(A) Grounds and Proceedings to
Procure
        212IV(A)1 In General
          212k132 k. Nature and Scope of
Provisional Remedy. Most Cited Cases
Because preliminary injunctions are extraordinary
forms of judicial relief, courts should grant them
sparingly.

**[3] Habeas Corpus 197 ⚖678.1**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
      197III(C) Proceedings
        197III(C)1 In General
          197k678 Operation and Effect of Writ
or Application
            197k678.1 k. In General. Most
Cited Cases

**War and National Emergency 402 ⚖11**

402 War and National Emergency
    402I In General
      402k11 k. Enemies, and Rights of War as to
Persons. Most Cited Cases
(Formerly 212k138.60)
Detainees who brought habeas proceeding to
challenge their detention in military facility were
not entitled to preliminary injunction requiring
thirty days' notice of their transfer to foreign
countries; no legal provision prohibited transfer of
wartime detainees to other countries and there was
no evidence that Department of Defense (DOD)
was transferring detainees to foreign countries for
any illicit purpose, and government's foreign
relations would be impeded by potential judicial
inquiries.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

370 F.Supp.2d 188

370 F.Supp.2d 188
**(Cite as: 370 F.Supp.2d 188)**

**[4] Habeas Corpus 197 ☜679**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
        197III(C) Proceedings
            197III(C)1 In General
                197k678 Operation and Effect of Writ or Application
                197k679 k. Supersedeas or Stay of Proceedings. Most Cited Cases
In the interest of judicial economy and avoiding unnecessary litigation, stay, pending resolution of appeals in similar cases, was warranted in habeas proceeding brought by foreign nationals being detained in military prison facility.

**[5] Habeas Corpus 197 ☜688**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
        197III(C) Proceedings
            197III(C)1 In General
                197k688 k. Discovery and Disclosure; Physical or Mental Examination. Most Cited Cases
Government would be required to produce factual returns regarding foreign nationals being detained in military prison facility at Guantanamo Bay; returns were necessary for detainees' counsel effectively to represent the detainees in their habeas proceeding.

**\*189** David A. Hickerson, Weil, Gotshal & Manges, L.L.P., Washington, DC, for petitioners. Terry Marcus Henry, U.S. Department of Justice, Civil Division, Washington, DC, for respondents.

MEMORANDUM OPINION

BATES, District Judge.
Petitioners Abdulla Thani Faris **Al-Anazi**, Adel Egla Hussan Al-Nussairi, N.A.O., FN1 Abdulaziz Sa'ad Oshan, and Ibrahim Suleiman Al-Rubaish (collectively the "petitioners") have filed a petition for a writ of habeas corpus challenging the legality of their detention by the United States at the United States Naval Station at Guantanamo Bay, Cuba (" Guantanamo"). Presently before the Court is petitioners' motion for a preliminary injunction

pursuant to Fed.R.Civ.P. 65 and the All Writs Act, 28 U.S.C. § 1651, which as it has evolved now seeks an order requiring respondents to provide petitioners' counsel with 30-days' notice of any proposed transfer of petitioners from Guantanamo to any location outside of the United States. For the reasons that follow, the Court denies petitioners' motion. FN2

> FN1. Petitioner N.A.O. was a minor at the time he was first detained at Guantanamo, and hence is referred to by his initials only.

> FN2. Several other issues are also before the Court, including respondents' motion to stay proceedings. Those issues will be addressed in this opinion as well.

BACKGROUND

**I. Procedural History**

Petitioners have been detained by the United States at Guantanamo for approximately the last three years. On February 17, 2005, they filed a petition for a writ of habeas corpus in this Court seeking, among other forms of relief, their release from the custody of the United States. This petition is similar to many others filed **\*190** by Guantanamo detainees in the United States District Court for the District of Columbia both before and since the Supreme Court held in *Rasul v. Bush*, 542 U.S. 466, 124 S.Ct. 2686, 2698, 159 L.Ed.2d 548 (2004), that the federal habeas statute "confers on the District Court jurisdiction to hear petitioners' habeas corpus challenges to the legality of their detention at the Guantanamo Bay Naval Base."

Late last year, eleven petitions advancing the claims of several dozen detainees were consolidated for further proceedings before Judge Joyce Hens Green, including a petition assigned to this judge, *O.K. v. Bush*, No. 04-CV-1136. On January 31, 2005, Judge Green granted in part and denied in part the government's motion to dismiss, holding that the Guantanamo detainees before her possessed constitutional and other legal grounds to challenge

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

370 F.Supp.2d 188                                                                                    Page 3

370 F.Supp.2d 188
**(Cite as: 370 F.Supp.2d 188)**

their detention. *See In re Guantanamo Detainee Cases,* 355 F.Supp.2d 443, 481 (D.D.C.2005). Almost simultaneously, on January 19, 2005, Judge Richard Leon of this Court granted the government's motion to dismiss the habeas petitions of two other Guantanamo detainees, concluding that there was no constitutional or other basis to challenge their detention. *See Khalid v. Bush,* 355 F.Supp.2d 311, 314 (D.D.C.2005). Those cases have been consolidated on appeal before the United States Court of Appeals for the District of Columbia Circuit. On February 3, 2005, Judge Green issued a stay in the eleven consolidated cases pending the appeal.

## II. Transfers From Guantanamo

On March 17, 2005, petitioners filed a motion for preliminary injunction. Although originally framed as an attempt to enjoin respondents from effectuating the transfer of petitioners from Guantanamo, the motion is now confined to the alternative request that respondents provide 30-days' notice (once a transfer has been decided) before a transfer actually occurs. The motion appears to have been prompted by a number of newspaper articles recently published about the transfer of detainees. Petitioners rely most heavily on an article in the March 11, 2005, edition of the New York Times reporting that the Pentagon is seeking to enlist the assistance of other departments in the United States government "in a plan to cut by more than half the population at its detention facility in Guantanamo Bay, Cuba, in part by transferring hundreds of suspected terrorists to prisons in Saudi Arabia, Afghanistan and Yemen, according to senior administration officials." Douglas Jehl, *Pentagon Seeks to Shift Inmates from Cuba Base,* N.Y. Times, Mar. 11, 2005, at A1.

Petitioners also cite articles discussing an alleged practice known as "rendition." Under this procedure, the Central Intelligence Agency ("CIA") allegedly transfers foreign nationals from one country to another, where the receiving governments are expected to carry out the will of the United States. In one article, a former detainee alleged that prior to being moved to Guantanamo,

he had been transferred to Egypt and questioned there by United States officials. *See* Megan K. Stack and Bob Drogin, *Detainee Says U.S. Handed Him Over for Torture,* L.A. Times, Jan. 13, 2005, at A1. Petitioners also cite an article discussing the case of a Syrian-born Canadian citizen who alleged that he was detained by the United States at Kennedy Airport immediately following September 11, 2001, and then transported to Syria, where he was interrogated and tortured before being released and returned to Canada. *See* Pet'rs' Mem. ¶ 7; Douglas Jehl and David Johnson, *Rule Change Lets CIA Freely Send Suspects Abroad,* N.Y. Times, Mar. 6, 2005, at A1. Petitioners concede that none of these incidents involve the transfer of detainees out of **\*191** Guantanamo. *See* Transcript of Motions Hearing ("Tr.") at 12:20-13:5 (April 13, 2005). Even the New York Times article on which they place the greatest weight notes the distinction between Guantanamo transfers and CIA rendition:
Unlike the Pentagon, the C.I.A. was authorized by President Bush after the Sept. 11 attacks to transfer prisoners from one foreign country to another without case-by-case approval from other government departments. Former intelligence officials said that the C.I.A. has carried out 100 to 150 such transfers, known as renditions, since Sept. 11. By contrast, the transfers carried out by the Pentagon are subject to strict rules requiring intraagency approval. Officials said that the transfers do not constitute renditions under the Pentagon's definition, because the government that accept the prisoners are not expected to carry out the will of the United States.

*Id.*

In response to petitioners' claims, respondents have submitted to the Court declarations from two high-ranking Department of Defense and Department of State officials describing the procedures that govern the detention and transfer of Guantanamo detainees. *See* Decl. of Matthew C. Waxman ("Waxman Decl."); Second Decl. of Matthew C. Waxman ("Second Waxman Decl."); Decl. of Pierre-Richard Prosper ("Prosper Decl."). The officials state that the United States has no interest in detaining the 540 foreign nationals presently at Guantanamo any longer than necessary,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

370 F.Supp.2d 188

370 F.Supp.2d 188
**(Cite as: 370 F.Supp.2d 188)**

Page 4

and that the Department of Defense ("DOD") therefore conducts at least an annual review of whether each detainee merits continued detention. Waxman Decl. ¶ 3.

The officials further explain that when detention is no longer deemed necessary, the DOD may transfer the detainee to the control of another country with the understanding that the country will release the individual. *Id.* Where the "appropriate conditions" exist, the DOD will also transfer detainees "to the control of other governments for investigation and possible prosecution and continued detention when those governments are willing to accept responsibility for ensuring, consistent with their laws, that the detainees will not continue to pose a threat to the United States and its allies." *Id.* Such governments can include the government of a detainee's home country, or a country other than the detainee's home country that may have law enforcement or prosecution interest in the detainee. *Id.*

As of April 13, 2005, two hundred and fourteen (214) detainees had been transferred from Guantanamo. *Id.*; Second Waxman Decl. ¶ 2. Of those, one hundred forty-nine (149) were transferred for release and sixty-five (65) were transferred for continued custody. Waxman Decl. ¶ 4; Second Waxman Decl. ¶ 2. <sup>FN3</sup> Each of the 65 detainees transferred for custody has been transferred to his home government. *Id.* ¶ 4. Most of those 65 have subsequently been released as well. *Id.* ¶ 5. Respondents also indicated at the April 13, 2005 motions hearing that some detainees transferred for release have in fact been detained by their home governments. In the cases where a detainee is transferred for continued detention by the detainee's home government, DOD "does not ask or *192 direct the receiving government to detain the individual on behalf of the United States," and "the detainees are no longer subject to the control of the United States once they are transferred." *Id.*

>    FN3. An April 19, 2005 DOD News Release indicates that an additional 18 detainees were recently transferred for

release, bringing the total to two hundred thirty-two (232) transferred and one hundred sixty-seven (167) transferred for release. *See* Department of Defense, *Detainee Transfer Announced,* Apr. 19, 2005, *available at* http://www.defenselink.mil/releases/2005/nr20050419-2661.html (last visited April 20, 2005).

Once a transfer is proposed, DOD consults other interested parties in the United States government, and in particular the Department of State. *Id.* ¶ 6. The Department of State is responsible for initiating discussions with the foreign government regarding transfer. Prosper Decl. ¶ 6. The purpose of these discussions is to learn the measures that the foreign government will take to ensure the detainee does not pose a continuing threat to the United States or its allies, and to receive appropriate assurances regarding the transfer. *Id.* The necessary assurances include assurances that the detainee will be humanely treated in accordance with international obligations. *Id.* If the foreign government is a party to the relevant treaties, i.e., the Torture Convention, the Department of State will pursue further assurances. *Id.*

Decisions regarding assurances from a foreign government are made on a case-by-case basis, considering the particular circumstances of the transfer, country, and individual involved and concerns regarding possible torture and persecution. *Id.* ¶ 7. The essential question in evaluating the assurances regarding treatment of a detainee proposed for transfer is whether the Department of State officials "believe it is more likely than not that the individual will be tortured in the country to which he is being transferred." *Id.* ¶ 8. When making this determination, the United States considers the identity, position, and information concerning the official providing the assurances, as well as political or legal developments in the country. *Id.* The Department of State also considers the United States diplomatic relations with the foreign government in assessing the sufficiency of assurances received, and will in some instances seek access to the individual by governmental and non-governmental entities in the foreign country in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 5

order to monitor the individual's return. *Id.* In the past, DOD has decided against the transfer of detainees because of concerns about torture in countries of origin. Waxman Decl. ¶ 7.

On the basis of their newspaper articles, and notwithstanding respondents' declarations, petitioners have asked this Court to issue a preliminary injunction ordering respondents to provide 30-days' notice prior to any transfer of a petitioner from Guantanamo. Because such advance notice would be provided only after DOD has decided to transfer a detainee, petitioners concede, as they must, that they are essentially requesting an order preventing the United States from transferring any Guantanamo detainee for 30 days. *See* Tr. at 4:1-4:15. Other Guantanamo detainees have filed similar motions for preliminary injunctions before other judges in this District seeking notice prior to any transfer from Guantanamo. Generally, other judges have ordered some form of the requested 30-days' notice, either by granting the motion for preliminary injunction, *see Abdah v. Bush,* No. 04-CV-1254, 2005 WL 711814 (HHK) (March 29, 2005 Order); *Al-Joudi v. Bush,* No. 05-CV-0301, 2005 WL 774847 (GK) (April 4, 2005 Order), by including the 30-days' notice as a condition of granting respondents' motion to stay the case, *see Abdullah v. Bush,* No. 05-CV-0023 (RWR) (March 16, 2005 Order), or by requiring the 30-days' notice pursuant to the All Writs Act, *see Ameziane v. Bush,* No. 05-CV-0392, 2005 WL 839542 (ESH) (April 12, 2005 Order). In one other case, *Almurbati v. Bush,* 366 F.Supp.2d 72 (D.D.C.2005) (April 14, 2005 Order), the court denied the requested 30-days' notice. In addition to the motion for a preliminary injunction, also before the *193 Court are respondent's motion to stay and petitioners' requests for an order to show cause, entry of a protective order, [FN4] and issuance of factual returns.

> FN4. Neither party opposes the entry of protective orders identical to those entered by Judge Green in the cases consolidated before her.

## LEGAL STANDARD

[1] To prevail on their motion for a preliminary injunction, petitioners must demonstrate (1) a substantial likelihood of success on the merits; (2) that they will suffer irreparable harm absent the relief requested; (3) that other interested parties will not be harmed if the requested relief is granted; and (4) that the public interest supports granting the requested relief. *Cobell v. Norton,* 391 F.3d 251, 258 (D.C.Cir.2004); *Katz v. Georgetown Univ.,* 246 F.3d 685, 687-88 (D.C.Cir.2001); *Taylor v. Resolution Trust Corp.,* 56 F.3d 1497, 1505-06 (D.C.Cir.1995); *Washington Area Metro. Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977). In determining whether to grant urgent relief, a court must "balance the strengths of the requesting party's arguments in each of the four required areas." *CityFed Fin. Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 747 (D.C.Cir.1995). "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *Id.* It is particularly important for petitioners to demonstrate a substantial likelihood of success on the merits; where a plaintiff cannot show a likelihood of success on the merits, "it would take a very strong showing with respect to the other preliminary injunction factors to turn the tide in plaintiff['s] favor." *Davenport v. Int'l Bhd. of Teamsters, AFL-CIO,* 166 F.3d 356, 366-67 (D.C.Cir.1999); *Nat'l Head Start Ass'n v. Dep't of Health and Human Servs.,* 297 F.Supp.2d 242, 246 (D.D.C.2004) (factors "must be balanced against each other, but it is especially important for the movant to demonstrate a likelihood of success on the merits"). [FN5]

> FN5. The test for a stay or injunction pending appeal is essentially the same, *see United States v. Philip Morris, Inc.,* 314 F.3d 612, 617 (D.C.Cir.2003) (citing *Holiday Tours,* 559 F.2d at 843), although courts often recast the likelihood of success factor as requiring only that the movant demonstrate a serious legal question on appeal where the balance of harms strongly favors a stay, *see Holiday Tours,* 559 F.2d at 844 ("fair ground for litigation" or "serious legal question").

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

370 F.Supp.2d 188

370 F.Supp.2d 188
**(Cite as: 370 F.Supp.2d 188)**

See generally *Cuomo v. United States Nuclear Reg. Comm'n,* 772 F.2d 972, 978 (D.C.Cir.1985) (movant must in any event justify the extraordinary remedy).

[2] Because preliminary injunctions are extraordinary forms of judicial relief, courts should grant them sparingly. *Sociedad Anonima Vina Santa Rita v. United States Dep't of the Treasury,* 193 F.Supp.2d 6, 13 (D.D.C.2001); *see Dorfmann v. Boozer,* 414 F.2d 1168, 1173 (D.C.Cir.1969). The Supreme Court has stated that " '[i]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.' " *Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997); *accord Cobell,* 391 F.3d at 258.

## ANALYSIS

### I. Motion for 30-Days' Notice

### A. Substantial Likelihood of Success on the Merits

[3] Petitioners argue that they have a substantial likelihood of succeeding on the merits of their claims because Judge Green has already denied respondents' motion to dismiss in the consolidated habeas petitions challenging the legality of their detention at Guantanamo. The Court agrees that the appeals from Judge *194 Green's and Judge Leon's decisions raise at least a serious question of law. However, the presence of a sound basis to challenge the legality of one's *detention* does not at all imply that there exists a sound basis to challenge the legality of one's *transfer*. Put differently, the " merits", if you will, to be assessed for purposes of the present claim for preliminary injunctive relief, is petitioners' challenge to their *transfer* from Guantanamo, not to their *detention* at Guantanamo.

Petitioners have not come forward with any legal authority that can be read to prohibit the transfer of Guantanamo detainees to a foreign country; any evidence that the United States is transferring Guantanamo detainees to foreign countries for an illicit purpose; or any reason to doubt the statements in the sworn declarations of high-level Department of Defense and Department of State officials that the United States relinquishes control of the detainees upon transfer to the foreign state and obtains all assurances necessary under the law from the foreign state that the detainee will be treated humanely upon transfer.

Petitioners contend that because they may face torture by a foreign state upon transfer, an injunction should issue. However, they do not identify a single legal provision that prohibits or even limits the transfer of wartime detainees to other countries. They reference in their papers the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub.L. No. 105-277, § 2242, 112 Stat. 2681 (codified at 8 U.S.C. § 1231 note), which states that it "shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture." FARRA § 2242(a). However, FARRA also expressly states that this "policy" shall not be " construed as providing any court jurisdiction to consider or review claims raised under the Convention [Against Torture] [FN6] or this section ... except as part of the review of a final order of removal pursuant to section 242 of the Immigration and Nationality Act." *Id.* § 2242(d). Petitioners do not attempt to explain how this language is consistent with the recognition of binding rights under FARRA outside of the context of a final order of removal. *See, e.g., Cornejo-Barreto v. Siefert,* 379 F.3d 1075, 1086 (9th Cir.2004) ("While § 2242(d) plainly contemplates judicial review of final orders of removal for compliance with the Torture Convention and the FARR Act, it just as plainly does not contemplate judicial review for anything else."), *vacated as moot,* 389 F.3d 1307 (9th Cir.2004) (en banc).

FN6. Convention Against Torture and Other Cruel, Inhuman or Degrading

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

370 F.Supp.2d 188

Page 7

370 F.Supp.2d 188
**(Cite as: 370 F.Supp.2d 188)**

Treatment or Punishment, G.A. Res. 46, U.N. GAOR 39th Sess., Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984), reprinted in 23 I.L.M. 1027 (1984).

Counseling even further against judicial interference in the transfer of detainees to other countries is a well-established line of cases in the extradition context holding that courts will not conduct an inquiry into "the procedures or treatment which await a surrendered fugitive in the requesting country." *United States v. Kin-Hong,* 110 F.3d 103, 110 (1st Cir.1997) (quotation omitted). Known as the "rule of non-inquiry," this doctrine is "shaped by concerns about institutional competence and by notions of separation of powers, " and stands for the general proposition that "it is the function of the Secretary of State-not the courts-to determine whether extradition should be denied on humanitarian grounds." *Kin-Hong,* 110 F.3d at 110; *Sidali v. INS,* 107 F.3d 191, 195 n. 7 (3d Cir.1997); *see also* *195Ahmad v. Wigen,* 910 F.2d 1063, 1067 (2d Cir.1990) ("The interests of international comity are ill-served by requiring a foreign nation ... to satisfy a United States district judge concerning the fairness of its laws and the manner in which they are enforced."); *Escobedo v. United States,* 623 F.2d 1098, 1107 (5th Cir.1980) ( "[T]he degree of risk to [Escobedo's] life from extradition is an issue that properly falls within the exclusive purview of the executive branch.") (citations and quotations omitted). The same separation of powers principles underlying the rule of non-inquiry have been applied outside of the non-extradition context to limit judicial review of the treatment of individuals in a foreign state. *See Holmes v. Laird,* 459 F.2d 1211, 1215 (D.C.Cir.1972) ("In situations such as this, the controlling considerations are the interacting interests of the United States and of foreign countries, and in assessing them we must move with the circumspection appropriate when a court is adjudicating issues inevitably entangled in the conduct of our foreign relations.") (citations and quotations omitted); *see also People's Mojahedin Org. v. Dep't of State,* 182 F.3d 17, 23 (D.C.Cir.1999) (holding that foreign policy decisions by the Executive "are political judgments, decisions of a kind for which the Judiciary has

neither aptitude, facilities nor responsibility and have long been held to belong in the domain of political power not subject to judicial intrusion or inquiry" (quotation omitted)).

Besides requesting an order to block the transfer on humanitarian grounds, petitioners also invoke the broad authority of the Court under the All Writs Act, on the theory that 30-days' notice (followed by judicial review of the grounds of transfer) is necessary to protect the Court's jurisdiction over petitioners' habeas petitions. *See* Pet'rs' Mem. ¶¶ 11-13. Petitioners' concern is that upon transfer for continued detention elsewhere, petitioners would lose their rights to have the legality of their detention adjudicated by this Court. *Id.* ¶ 13.

The All Writs Act empowers a district court to " issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651; *SEC v. Vision Communications, Inc.,* 74 F.3d 287, 291 (D.C.Cir.1996) (All Writs Act "empowers a district court to issue injunctions to protect its jurisdiction"). Like a motion for a preliminary injunction, the All Writs Act is an extraordinary remedy pursuant to which a court may "enjoin almost any conduct which, left unchecked, would have ... the practical effect of diminishing the court's power to bring the litigation to a natural conclusion." *Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1102 (11th Cir.2004) (quotation omitted); *see also Alabama Great S. Ry. Co. v. Thompson,* 200 U.S. 206, 218, 26 S.Ct. 161, 50 L.Ed. 441 (1906) (federal courts "may and should take such action as will defeat attempts to wrongfully deprive parties of the protection of their rights in those tribunals").

At the outset, there is no evidence in the record that respondents are seeking to thwart this Court's jurisdiction. Petitioners have provided the Court with no evidence whatsoever that DOD is transferring (or planning to transfer) Guantanamo detainees as a pretext for continuing United States detention in collusion with a foreign state (or on its own) on foreign soil. Respondents have submitted declarations stating emphatically that this is not the practice of DOD. *See* Waxman Decl. ¶ 5 (DOD "

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

370 F.Supp.2d 188

Page 8

370 F.Supp.2d 188
**(Cite as: 370 F.Supp.2d 188)**

does not ask or direct the receiving government to detain the individual on behalf of the United States. Accordingly, the detainees are no longer subject to the control of the United States once they are transferred."); *id.* ¶ 4 ("[T]here [is no] plan to effect transfers of GTMO detainees in order to thwart the actual or putative *196 jurisdiction of any court with respect to the detainees."). [FN7] Even the newspaper articles on which petitioner stake their motion draw a clear distinction between alleged acts of CIA rendition (where the foreign countries are "expected to carry out the will of the United States") and the alleged Guantanamo transfers (where the foreign countries are not " expected to carry out the will of the United States"). *See* Jehl, *supra,* at A1.

> FN7. Of the 232 detainees that have been transferred from Guantanamo as of the date of this opinion, 131 were transferred at least three months prior to the Supreme Court's decision in *Rasul v. Bush* recognizing the jurisdiction of the federal courts over the habeas petitions of Guantanamo detainees, thus casting doubt on petitioners' suggestion that DOD is undertaking a policy of transfer to thwart the jurisdiction of the courts. *See* Department of Defense, *Transfer of Afghani and Pakistani Detainees Complete* (March 15, 2004) *available at* http://www.defenselink.mil/release s/2004/nr20040315-0462.html (last visited April 20, 2005).

More importantly though, there is no justification for issuance of an injunction pursuant to the All Writs Act when petitioners are obtaining the same relief through transfer that they could hope to obtain through habeas. In this case, petitioners have properly invoked this Court's jurisdiction under habeas to determine the legality of their detention. *See Rasul,* 124 S.Ct. at 2698; Pet. at 28. Now, however, petitioners want this Court, pursuant to the All Writs Act, to delay or even block their release so that petitioners can fully adjudicate their habeas petitions. *See* Pet'rs' Mem. ¶ 13. But there is no basis for the Court to maintain its

jurisdiction to consider such extraordinary relief when the record shows that petitioners would obtain the same level of relief via transfer that they could get from full adjudication of their habeas petition. Were the Court to preserve its jurisdiction over the habeas petitions, and ultimately determine that the United States may no longer detain the petitioners, the parties and the Court would find themselves in precisely the same position in which they find themselves now-with the respondents taking steps to transfer those individuals out of United States control, and the petitioners compelled to come forward with some legal or evidentiary basis to prevent a transfer to an "undesireable" country. If respondents release petitioners now, that in no way prevents the "natural conclusion" of this litigation, i.e., release of petitioners, and therefore there is no basis for this Court to issue an injunction pursuant to the All Writs Act. *See Klay,* 376 F.3d at 1102.

The Court emphasizes that it reaches this result today based on the record with which it is presented-there is no evidence that DOD is transferring Guantanamo detainees to foreign countries for an illicit purpose, and quite a bit of evidence to the contrary (including petitioners' own newspaper articles and, more importantly, the declarations of high level government officials). [FN8] Respondents indicated at the hearing on petitioners' motion that they share the view of the Court that they have an ongoing obligation to inform the Court if DOD were to begin transferring Guantanamo detainees overseas for continuing *197 United States custody (either on its own or in collusion with a foreign state). On the current record, however, there is simply no basis in law or fact to challenge the transfer of Guantanamo Bay detainees to a foreign country. [FN9]

> FN8. The Court is aware of and sensitive to the fact that petitioners' counsel have not yet had the opportunity to meet with petitioners, and as a more general matter do not have access to the often classified information that would shine light on the detention and possible transfer of petitioners. None of this relieves petitioners of the burden of coming

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

370 F.Supp.2d 188

370 F.Supp.2d 188
**(Cite as: 370 F.Supp.2d 188)**

Page 9

forward with *at least some* information to support their request for the extraordinary relief of a preliminary injunction against the transfer of these detainees. The Court notes that petitioners' counsel indicated at the April 13, 2005 hearing that a meeting with clients will occur after counsel receives the necessary security clearance.

FN9. Petitioners have cited this Court's decision in *Abu Ali v. Ashcroft,* 350 F.Supp.2d 28 (D.D.C.2004), in which the Court held that jurisdiction could potentially exist over a habeas petition by a United States citizen detained in a Saudi prison who alleged that he was being held at the behest and ongoing direction of the United States, as an example of a case where the United States was using a foreign intermediary to avoid the jurisdiction of the United States courts. *See* Pet'rs'. Mem. ¶ 9. *Abu Ali* is not particularly instructive here. This Court's decision in *Abu Ali* was at the motion to dismiss stage, where the Court was obliged to accept petitioners' allegations of collusion between the United States and Saudi Arabia as true. *Abu Ali,* 350 F.Supp.2d at 34-35. Here, petitioners bear the heavy burden of proving their entitlement to preliminary injunctive relief. Moreover, the petitioners in *Abu Ali* came forward with a variety of different types of information suggesting United States involvement in the detention, including newspaper articles quoting named United States officials, declarations containing the transcribed text of government documents, and affidavits regarding communications between petitioner's family and Saudi officials. *Id.* at 31-36. Here, petitioners have come forward with no information at all suggesting the collusive transfer of Guantanamo Bay detainees. In addition, although the United States chose not to respond to the evidence proffered by petitioner in that case, *id.* at 37-38, it has produced strong rebuttal evidence here. Finally, unlike the petitioners in this case,

the detainee in *Abu Ali* was a United States citizen, a fact that featured prominently in the reasoning of that case. *Id.* at 37-41, 54-65.

### B. Irreparable harm

By the same token, petitioners cannot show that they will suffer irreparable harm in the absence of the injunction they seek. The lynchpin of a request for preliminary injunctive relief is a showing of irreparable injury to the movant in the absence of the requested relief. *See Sociedad Anonima,* 193 F.Supp.2d at 13-14. The harm must be concrete and immediate to warrant extraordinary injunctive relief, and vague or speculative injury will not suffice. *See Wisconsin Gas Co. v. Fed. Energy Reg. Comm'n,* 758 F.2d 669, 674 (D.C.Cir.1985) (" the injury must be both certain and great; it must be actual and not theoretical"). In short, the threatened injury must be of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm, because injunctions are not intended "to prevent injuries neither extant nor presently threatened, but only merely feared." *Comm. in Solidarity v. Sessions,* 929 F.2d 742, 745-46 (D.C.Cir.1991) (quotations omitted).

In this case, the evidence presented by petitioners-or the lack thereof-balanced with the sworn declarations of high level government officials, fails to establish that petitioners face irreparable harm in the absence of 30-days' advance notice of transfer. As indicated earlier, there is no evidence at all that petitioners are being transferred for the purpose of torture or in inappropriate collusion with a foreign government. Although petitioners express concern about how they might be treated by a foreign state if they are transferred, not only have they identified no legal basis for judicial intervention on their behalf to protect them from the treatment of a foreign state, but they also cannot explain how they would be aided by 30-days' notice of transfer. Petitioners indicated at the motions hearing that they are most concerned about the possibility of United States involvement in the ongoing detention or torture of transferred detainees, but they do not explain how they could possibly obtain any evidence suggesting that was

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

370 F.Supp.2d 188
**(Cite as: 370 F.Supp.2d 188)**

the plan of the United States in the 30-day window they would have before **\*198** a transfer. To the extent that notice would therefore in reality be a precursor as a matter of course to an objection to transfer and months of discovery into the intent of the United States and the foreign states then the substantial injury to the government (discussed below) becomes all the more pronounced in weighing the respective harms to the parties.

To be sure, if the United States were transferring detainees abroad specifically to thwart this Court's jurisdiction, that might establish irreparable harm. But petitioners would have to provide some evidence of such conduct, for example by showing that detainees were being transferred to other countries at the behest of, and to serve the interests of, the United States. This they have not done. Moreover, as discussed above, petitioners have not shown how they would actually be harmed by an alleged loss of jurisdiction. Every habeas petition, including this one, is ultimately about obtaining release from detention, *see Rasul*, 124 S.Ct. at 2692, and where, as here, the United States will relinquish custody of the detainee to the home government there is nothing more the Court could provide to petitioners. [FN10]

> FN10. This Court has no authority to prevent a foreign sovereign from pursuing an independent law enforcement action against a detainee, or to order the United States to transfer a detainee to the country of his choosing. Such matters involve diplomatic and foreign policy considerations, which are generally the exclusive purview of the Executive.

Petitioners' showing of irreparable harm is thus highly speculative and well short of the necessary certainty for the issuance of a preliminary injunction. *See Wisconsin Gas Co.,* 758 F.2d at 674. At its core, the alleged irreparable harm is founded on fear and mistrust. It may be understandable for petitioners and their counsel to mistrust the Executive, but this Court cannot rule based on petitioners' speculation, innuendo, and mistrust. The role of the judiciary is a simple

one-determine facts and apply the law to those facts to reach a decision. The Court will not abdicate that fundamental role here. On the record before the Court, and the applicable legal standard, petitioners have not established the requisite threat of irreparable harm.

### C. Harm to Respondents

The third prong of the preliminary injunction test considers the harm that injunctive relief would impose on other interested parties. *See Cobell,* 391 F.3d at 258. Respondents have explained that the notice, and the judicial review of the transfer that would follow, would render agreements with foreign states contingent and therefore impede the ability of the United States to communicate with foreign nations with a single voice, would chill the frank discussions with foreign governments that are essential to diplomatic relations, and will give foreign states pause before accepting Guantanamo detainees when they are informed that the acceptance carries the condition of a period of delay and then potential inquiry by a United States court into the communications between the United States and the foreign state and even into the treatment the foreign state anticipates providing the detainee following transfer. *See generally* Resp'ts' Opp. at 22; Tr. at 68-69; Prosper Decl. ¶ 12. These are considerable concerns. *See Crosby v. National Foreign Trade Council,* 530 U.S. 363, 381, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000) (expressing disapproval of acts that "compromise the very capacity of the President to speak for the nation with one voice in dealing with other governments"). Petitioners' only response is that they are unlikely to contest many transfers, which even if true does little to assuage these concerns because it is the *possibility* of judicial review in any particular case that will hamstring discussions **\*199** with foreign states. The substantial harm to the Executive in carrying out its foreign relations militates strongly against the injunction sought in this case.

### D. Public Interest

Finally, there is a strong public interest against the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

370 F.Supp.2d 188    Page 11

370 F.Supp.2d 188
**(Cite as: 370 F.Supp.2d 188)**

judiciary needlessly intruding upon the foreign policy and war powers of the Executive on a deficient factual record. Where the conduct of the Executive conforms to law, there is simply no benefit-and quite a bit of detriment-to the public interest from the Court nonetheless assuming for itself the role of a guardian ad litem for the disposition of these detainees. *See People's Mojahedin Org.,* 182 F.3d at 23 ("[I]t is beyond the judicial function for a court to review foreign policy decisions of the Executive Branch."). FN11

> FN11. Petitioners have suggested that this Court could make the 30-day notice of a proposed transfer a condition of the stay it is issuing in this case. *See infra.* However, the "standards for evaluating a motion for stay pending appeal are substantially the same as those for issuing a preliminary injunction," and so if the petitioners cannot meet the prerequisites of a motion for preliminary injunction (as the Court concludes), it is unlikely that they should receive that same relief through the backdoor of a stay. *Laborers' Intern. Union of North America v. National Post Office Mail Handlers, Watchmen, Messengers and Group Leaders Div. of Laborers Intern. Union of North America,* 1988 WL 142384, at *1 (D.D.C. Dec., 23, 1988). More to the point, perhaps, petitioners have not identified any legal authority that is likely to be interpreted by the Court of Appeals in its consideration of the legality of the detention of Guantanamo detainees that would bear on the question of the transfer of those detainees. In these circumstances, this Court cannot discern a reason why a stay of a *transfer* decision pending Court of Appeals resolution of the *detention* issue would be appropriate. The Court notes that petitioners did not even attempt to argue in their papers that Federal Rule of Appellate Procedure 23 requires a stay of a transfer decision, because petitioners' habeas petition is not presently on appeal.

## II. Motion to Stay

[4] Respondents have filed a motion to stay this case pending resolution of the appeals in *In re Guantanamo Detainee Cases,* 355 F.Supp.2d 443 (D.D.C.2005), and *Khalid v. Bush,* 355 F.Supp.2d 311 (D.D.C.2005), regarding whether the detention of the detainees in those cases violates any source of law. Petitioners have objected to a stay, arguing that the case should proceed on its merits. Other judges of this Court faced with this question have entered stays. *See, e.g., Abdullah v. Bush,* Case No. 05-CV-0023 (RWR) (March 16, 2005 Order); *Ameziane v. Bush,* Case No. 05-CV-0392 (ESH) (April 2, 2005 Order). In the interest of judicial economy and avoiding unnecessary litigation, the Court will grant respondents' motion to stay the case pending appellate review of important issues relating to the rights of Guantanamo detainees to challenge the lawfulness of their detention. Nothing will be gained by this Court addressing issues the D.C. Circuit is about to decide, particularly since a stay would in any event be entered were petitioners to prevail before this Court on those core issues (just as has transpired before Judge Green). In light of the stay, the Court will issue petitioners' requested order to show cause, but stay respondents' obligation to respond.

[5] Petitioners have also requested that respondents produce their factual returns, which DOD has compiled for each Guantanamo detainee. Respondents counter that the production of any factual returns should await the D.C. Circuit's decision. They note that given the large number of habeas corpus petitions, it would be a waste of resources to require production of factual returns before the D.C. Circuit has decided whether they are even necessary. Furthermore, respondents**200** have raised concerns about the security of the factual returns, noting at the motions hearing that there had been an isolated, inadvertent disclosure of classified information in one case. Although the Court is sensitive to the concerns of respondents, the factual returns appear necessary for petitioners' counsel to effectively represent petitioners. Indeed, even initial conversations by counsel with their clients may be very difficult without access to that basic factual information. Therefore, this

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

370 F.Supp.2d 188

370 F.Supp.2d 188
**(Cite as: 370 F.Supp.2d 188)**

Court will require respondents to produce the factual returns for petitioners within one hundred and twenty (120) days.

## CONCLUSION

For the above reasons, petitioners' motion for a preliminary injunction is denied. The Court will grant respondents' motion to stay the case pending the resolution of the appeals in *In re Guantanamo Detainee Cases* and *Khalid v. Bush.* However, respondents must file with the Court and provide to petitioners' counsel the factual returns for all petitioners within 120 days. The Court will also enter by reference the protective orders and supplementary orders previously entered by Judge Green in *In re Guantanamo Detainee Cases,* No. 02-CV-0299. A separate order has been issued.

## ORDER

Upon consideration of petitioners' motion for a preliminary injunction and respondents' motion to stay, the memoranda of the parties, and the entire record herein, and for the reasons explained in the Memorandum Opinion issued on this date, it is this 21st day of April, 2005, hereby

**ORDERED** that petitioners' motion for a preliminary injunction is **DENIED**; it is further

**ORDERED** that petitioners' motion for an order to show cause is **GRANTED**; it is further

**ORDERED** that respondents' motion to stay the case is **GRANTED**, and respondents' obligation to show cause why the petition should not be granted is stayed; it is further

**ORDERED** that the case shall be stayed pending resolution of the appeals in *In re Guantanamo Detainee Cases,* 355 F.Supp.2d 443 (D.D.C.2005), and *Khalid v. Bush,* 355 F.Supp.2d 311 (D.D.C.2005). This stay shall not, however, prevent the parties from availing themselves of the procedures set forth in the Orders entered below, nor shall it bar the filing or disposition of any

motion for emergency relief; it is further

**ORDERED** that the Court enters by way of reference the protective order and supplementary orders previously entered in *In re Guantanamo Detainee Cases,* No. 02-CV-0299, *et al.,* by Judge Joyce Hens Green. These include the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, first issued on November 8, 2004; the Order Addressing Designation Procedures for "Protected Information," entered on November 10, 2004; and the Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order, issued on December 13, 2004; and it is further

**ORDERED** that respondents shall provide factual returns to the Court and to petitioners' counsel within one hundred twenty (120) days of the date of this Order.

D.D.C.,2005.
Al-Anazi v. Bush
370 F.Supp.2d 188

Briefs and Other Related Documents (Back to top)

• 1:05cv00345 (Docket) (Feb. 17, 2005)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT F

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                                    )
MAJID RADHI AL TOUME AL SHAMRI )
et al.,                             )
                                    )
       Petitioners,                 )
                                    )
            v.                      )    Civil Action No. 05-551 (RWR)
                                    )
GEORGE W. BUSH et al.,              )
                                    )
       Respondents.                 )
                                    )
```

MEMORANDUM ORDER

Petitioner Majid Radhi Al toume Al Shamri, through his next friend, Hmood Nasser Al Mutairi, seeks a writ of habeas corpus, challenging the legality of his detention by the United States at Guantanamo Bay Naval Base, Cuba. Respondents moved for a stay of proceedings [Dkt. # 4] pending resolution of the appeals in In re Guantanamo Detainee Cases, 355 F. Supp. 2d 443 (D.D.C. 2005), appeal docketed, No. 05-8003 (D.C. Cir. March 10, 2005), and Kalid v. Bush et al., 355 F. Supp. 2d 311 (D.D.C. 2005), appeal docketed sub nom. Boumediene v. Bush et al., No. 05-5062 (D.C. Cir. March 10, 2005). Petitioners' opposition to the stay [Dkt. # 8] requests, at a minimum, that any stay imposed be flexible enough to allow petitioner to seek interim relief when warranted, that petitioner not be removed or transferred from Guantanamo Bay absent 30 days notice to this court and counsel for petitioners,

-2-

and that a factual return setting forth the basis for Petitioner
Al Shamri's detention be filed within 30 days.

A primary purpose of a stay pending resolution of the issues
on appeal is to preserve the status quo among the parties.
Washington Area Metro. Transit Comm'n v. Holiday Tours, Inc., 559
F.2d 841, 844 (D.C. Cir. 1977) (a stay pending appeal is
preventative or protective, and seeks to maintain the status quo
pending a final determination of issues on appeal); see Warm
Springs Dam Task Force v. Gribble, 417 U.S. 1301, 1310 (1974)
(granting stay pending appeal to maintain the status quo between
the parties). A court may, in appropriate situations, specify
protective conditions in balancing the hardship necessarily
imposed on the party whose suit or execution of judgment has been
stayed pending appeal. Cooks v. Fowler, 459 F.2d 1269, 1272-73 &
n.27 (D.C. Cir. 1971) (affirming condition of stay requiring
tenant appealing judgment to deposit funds in court registry
pending appeal); see also, City of Portland, Or. v. Federal
Maritime Comm'n, 433 F.2d 502, 504 (D.C. Cir. 1970) (directing
the proponent of a stay in a case challenging shippers' exclusion
of one city's port from service to "be prepared to state reasons
why this court should not impose a conditional stay requiring the
rotation of service among the ports involved pending final review
and determination."); Scott v. Scott, 382 F.2d 461, 462 (D.C.

-3-

Cir. 1967) (discussing a stay of execution of judgment

conditioned upon support payments); <u>Center for Int'l</u>

<u>Environmental Law v. Office of the U.S. Trade Rep.</u>, 240 F. Supp.

2d 21, 23 (D.D.C. 2003) (conditioning stay pending appeal on

party seeking an expedited appeal). Where, as here, the

condition imposed on the proponent of the stay is "neither heavy

nor unexpected," imposing a protective condition is well within a

court's discretion. <u>Cooks v. Fowler</u>, 459 F.2d at 249 (quoting

<u>Bell v. Tsintolas Realty Co.</u>, 430 F.2d at 482 (D.C. Cir. 1970)

(stating "[w]e have little doubt that . . . [a court] may fashion

an equitable remedy to avoid placing one party at a severe

disadvantage during the period of litigation")).

    Therefore, here

> the court will "guard against depriving the processes
> of justice of their suppleness of adaptation to varying
> conditions." <u>Landis v. North American Co.</u>, 299 U.S.
> 248, 256 (1936). Coextensive with a district court's
> inherent power to stay proceedings is the power to
> craft a stay that balances the hardships to the
> parties. <u>Id.</u> at 255 (noting concern regarding a stay
> causing "even a fair possibility . . . [of] damage to
> some one else."); <u>see also</u> <u>Clinton v. Jones</u>, 520 U.S.
> 681, 707 (1997) (noting that "burdens [to the parties]
> are appropriate matters for the District Court to
> evaluate in its management of the case.").

<u>Al-Oshan v. Bush</u>, Civil Action No. 05-520 (D.D.C. Mar. 31, 2005)

(Urbina, J.) (Order, Dkt. # 12). Accordingly, it is hereby

-4-

ORDERED that respondents' motion for a stay [Dkt. # 4] be, and hereby is, GRANTED in part and DENIED in part. The proceedings in this case are STAYED pending resolution of the appeals pending before the United States Court of Appeals for the District of Columbia Circuit, in In re Guantanamo Detainee Cases and Boumediene v. Bush et al., except that petitioners may seek emergency relief from this court in appropriate circumstances, such as when petitioners have reason to believe that they are facing the possibility of continued detention at the request of the United States in a location that does not provide access to this court. It is further

ORDERED that respondents, their agents, servants, employees, confederates, and any persons acting in concert or participation with them, or having actual or implicit knowledge of this Order by personal service or otherwise, shall not transfer or remove the detained petitioner from United States custody at Guantanamo Bay unless this court and counsel for petitioners receive thirty days' advance notice of such transfer or removal. It is further

ORDERED that, given the ongoing conduct of combatant status review tribunals, respondents shall file within 30 days of the entry of this Order a factual return relating to the detained petitioner.

-5-

SIGNED this 10th day of May, 2005.


                                        /s/
                              _____
                              RICHARD W. ROBERTS
                              United States District Judge

# EXHIBIT G

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                                    )
JAMIL EL-BANNA et al.,              )
                                    )
        Petitioners,                )
                                    )
            v.                      )    Civil Action No. 04-1144 (RWR)
                                    )
GEORGE W. BUSH et al.,              )
                                    )
        Respondents.                )
                                    )
                                    )
HANI SALEH RASHID ABDULLAH          )
et al.,                             )
                                    )
        Petitioners,                )
                                    )
            v.                      )    Civil Action No. 05-23 (RWR)
                                    )
GEORGE W. BUSH et al.,              )
                                    )
        Respondents.                )
                                    )
                                    )
ABDULLAH IBRAHIM ABDULLAH           )
AL RASHAIDAN et al.,                )
                                    )
        Petitioners,                )
                                    )
            v.                      )    Civil Action No. 05-586 (RWR)
                                    )
GEORGE W. BUSH et al.,              )
                                    )
        Respondents.                )
                                    )
```

-2-

## MEMORANDUM ORDER

Petitioners Jamil El-Banna, Bisher Al-Rawi, Martin Mubanga,[1] Hani Abdullah, Rami Al-Oteibi,[2] and Abdullah Al Rashaidan,[3] in three separate cases seek writs of habeas corpus, challenging the legality of their detention by the United States at Guantanamo Bay Naval Base, Cuba.  Respondents moved for a stay of proceedings in each case pending resolution of the appeals in In re Guantanamo Detainee Cases, — F. Supp. 2d — , 2005 WL 195356 (D.D.C. Jan. 31, 2005), appeal docketed, No. 05-8003 (D.C. Cir. March 10, 2005), and Boumediene v. Bush et al., — F. Supp. 2d — , 2005 WL 100924 (D.D.C. Jan. 19, 2005), appeal docketed, No. 05-5062 (D.C. Cir. March 10, 2005).  A primary purpose of a stay pending resolution of the issues on appeal is to preserve the status quo among the parties.  Washington Area Metro. Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C. Cir. 1977) (a stay pending appeal is preventative or protective, and seeks to maintain the status quo pending a final determination of issues on appeal); see Warm Springs Dam Task Force v. Gribble, 417 U.S. 1301, 1310 (1974) (granting stay pending appeal to

---

[1] Petitioner-detainees in Civil Action No. 04-1144.

[2] Petitioner-detainees in Civil Action No. 05-23.

[3] Petitioner-detainee in Civil Action No. 05-586.

-3-

maintain the status quo between the parties). In Civil Action
No. 04-1144, Judge Joyce Hens Green entered a stay order on
February 3, 2005. (Dkt. # 122.) In Civil Action No. 05-23, a
stay was entered on March 16, 2005 that nevertheless allowed
petitioners to seek from this court emergency relief in
appropriate circumstances, such as when petitioners reasonably
believe they will be removed from the jurisdiction of this court.
(Dkt. # 16).[4] In Civil Action No. 05-586, respondents' motion to
stay the proceedings is pending.

In each action, petitioners have moved for a preliminary
injunction to enjoin respondents from transferring any of the
petitioner-detainees from United States custody at Guantanamo Bay
Naval Base to any other location or any other custodian without
providing 30 days notice of the intended transfer or removal.
Petitioners fear that respondents may involuntarily "render" the
detainees to other countries, where they may be subject to
continued detention without due process of law or to mental or
physical abuse, and, by means of transfer, divest this court of
jurisdiction either as a practical or legal matter. Respondents
oppose petitioners' motions for a preliminary injunction.

---

[4] A protective order was entered in that case on the same
day. (Dkt. # 17.)

-4-

Petitioners' fears do not appear fanciful.   Petitioners cite to a report of an investigative journalist describing the rendition of several named individuals who have been transferred in and out of United States custody, a practice respondents have not denied in these proceedings.   Further, respondents concede they have transferred custody of many Guantanamo detainees to foreign sovereigns and assert that such transfer divests this court of jurisdiction over pending habeas corpus petitions. Another press report cited by petitioners, and not denied by respondents, indicates that respondents either have, or had, plans to accelerate the transfer of Guantanamo detainees to other sovereigns and other locations.

The outcome petitioners fear, if realized, would improperly subvert the court's ability to adjudicate these actions on their merits.   See Rasul v. Bush, 124 S. Ct. 2686, 2698 (2004) ("We therefore hold that [28 U.S.C.] § 2241 confers on the District Court jurisdiction to hear petitioners' habeas corpus challenges to the legality of their detention at the Guantanamo Bay Naval Base.").   Furthermore, such a result would nullify the stay's purpose of preserving the status quo between the parties.

"It is well established that 'the federal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the Federal courts for the

-5-

protection of their rights in those tribunals.'" Abu Ali v.
Ashcroft, 350 F. Supp. 2d 28, 54 (D.D.C. 2004) (quoting Alabama
Great S. R. Co. v. Thompson, 200 U.S. 206, 218 (1906)). In
addition, a court may, in appropriate situations, specify
protective conditions in balancing the hardship necessarily
imposed on the party whose suit or execution of judgment has been
stayed pending appeal. Cooks v. Fowler, 459 F.2d 1269, 1272-73 &
n.27 (D.C. Cir. 1971) (affirming condition of stay requiring
tenant appealing judgment to deposit funds in court registry
pending appeal); see also, City of Portland, Or. v. Federal
Maritime Comm'n, 433 F.2d 502, 504 (D.C. Cir. 1970) (directing
the proponent of a stay in a case challenging shippers' exclusion
of one city's port from service to "be prepared to state reasons
why this court should not impose a conditional stay requiring the
rotation of service among the ports involved pending final review
and determination."); Scott v. Scott, 382 F.2d 461, 462 (D.C.
Cir. 1967) (discussing a stay of execution of judgment
conditioned upon support payments); Center for Int'l
Environmental Law v. Office of the U.S. Trade Rep., 240 F. Supp.
2d 21, 23 (D.D.C. 2003) (conditioning stay pending appeal on
party seeking an expedited appeal). Where, as here, the
condition imposed on the proponent of the stay is "neither heavy
nor unexpected," imposing a protective condition is well within a

-6-

court's discretion.  Cooks v. Fowler, 459 F.2d at 249 (quoting

Bell v. Tsintolas Realty Co., 430 F.2d at 482 (D.C. Cir. 1970)

(stating "[w]e have little doubt that . . . [a court] may fashion

an equitable remedy to avoid placing one party at a severe

disadvantage during the period of litigation")).

    Therefore, here

        the court will "guard against depriving the processes
        of justice of their suppleness of adaptation to varying
        conditions." Landis v. North American Co., 299 U.S.
        248, 256 (1936).  Coextensive with a district court's
        inherent power to stay proceedings is the power to
        craft a stay that balances the hardships to the
        parties.  Id. at 255 (noting concern regarding a stay
        causing "even a fair possibility . . . [of] damage to
        some one else."); see also Clinton v. Jones, 520 U.S.
        681, 707 (1997) (noting that "burdens [to the parties]
        are appropriate matters for the District Court to
        evaluate in its management of the case.").

Al-Oshan v. Bush, Civil Action No. 05-520 (D.D.C. Mar. 31, 2005)

(Urbina, J.) (Order, Dkt. # 12).  Accordingly, it is hereby

    ORDERED that respondents' motion for a stay in Civil Action

No. 05-586 (Dkt. # 5) be, and hereby is, GRANTED in part and

DENIED in part.  The proceedings in Civil Action No. 05-586 are

STAYED pending resolution of the appeals pending before the

United States Court of Appeals for the District of Columbia

Circuit, in In re Guantanamo Detainee Cases and Boumediene v.

Bush et al., except that petitioners in Civil Action Nos. 04-1144

and 05-586 may seek emergency relief from this court in

-7-

appropriate circumstances, such as when petitioners have reason to believe that they are facing the possibility of continued detention at the request of the United States in a location that does not provide access to this court. It is further

ORDERED that in all three cases captioned above, respondents, their agents, servants, employees, confederates, and any persons acting in concert or participation with them, or having actual or implicit knowledge of this Order by personal service or otherwise, may not transfer or remove the detained petitioners from United States custody at Guantanamo Bay unless this court and counsel for petitioners receive thirty days' advance notice of such transfer or removal. It is further

ORDERED that, given the ongoing conduct of combatant status review tribunals, respondents shall file factual returns relating to each detained petitioner within 30 days after entry of a protective order in that petitioner's action, unless such returns have been filed already. It is further

ORDERED that the motions for a preliminary injunction in all three cases captioned above (Dkt. # 128, Civil Action No. 04-1144; Dkt. # 15, Civil Action No. 05-23; Dkt. # 3, Civil Action No. 05-586) be, and hereby are, DENIED as moot.

-8-

SIGNED this 8th day of April, 2005.

_____/s_____
RICHARD W. ROBERTS
United States District Judge

# EXHIBIT H

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SALEH ABDULLA AL-OSHAN *et al.*,                    :
                                                    :
                        Petitioners/                :
                        Plaintiffs,                 :
                                                    :
            v.                                      :        Civil Action No.:    05-0520 (RMU)
                                                    :
GEORGE W. BUSH *et al.*,                            :        Document No.:        15
                                                    :
                        Respondents/                :
                        Defendants                  :

MEMORANDUM ORDER

GRANTING MOTION TO COMPEL;
ORDERING THE RESPONDENTS TO FILE FACTUAL RETURNS

This matter comes before the court on the petitioners' motion to compel.  The petitioners

request that the court order the government to produce factual returns justifying the ongoing

detention of the petitioners at the United States Naval Station at Guantanamo Bay, Cuba

("GTMO").  If, as in this case, the court orders the respondent to show cause in response to a

habeas petition, "[t]he person to whom the . . . order is directed *shall* make a return certifying the

true cause of the detention."  28 U.S.C. § 2243 (emphasis added).[1]

---

[1] The court issued a show cause order on March 22, 2005.  Order (Mar. 22, 2005).  The
government purports to answer that show cause order in its motion to stay.  Defs.' Mot. to Stay at 9 n.5
(noting that, "[b]y the filing of this motion . . . respondents have complied with [the show cause order]")
(citing Habeas Rule 4).  Because the court would rather focus its attention on the merits of these cases
than disciplining the government's lawyers and explaining the obvious – for example, that a footnote in a
motion to stay does not show "cause" in response to a show cause order – the court simply notes at this
juncture that the Habeas Rule the government (mis)quotes, *id.* (quoting the Rule as requiring the
respondents to submit "an answer or other pleading"), when read in context, ultimately requires the
government to respond to what the court orders; the rule does not give the government discretion to
proceed as it has thus far.  Habeas Rule 4 (providing that "the judge must order the respondent to file an
answer, motion, or other response within a fixed time, or to take other action the judge may order").

1

The government takes the position that

[i]t makes no sense for proceedings related to the merits of these cases, such as the submission of factual returns in response to orders to show cause regarding the issuance of habeas writs, to go forward when decision from the D.C. Circuit on the related Guantanamo detainee appeals, which are proceeding in an expedited fashion, will determine the legal analyses applicable to the cases and, indeed, whether and how these cases should proceed.

Defs.' Mot. to Stay at 9. Furthermore, the government argues that requiring submission of factual returns "burdens the government's resources and risks the inadvertent disclosure of classified information." *Id.* at 11.

The fact that the D.C. Circuit has not yet issued its decision in the related appeals (or that this case is stayed pending the D.C. Circuit's decision on those appeals) does not prevent the government from processing the returns. On the contrary, the court determines that petitioners' counsel should be able to review the returns now so that they can develop their case and prepare for any consultation with their clients. As to the government's concerns regarding classified information, the protective order entered in this case will guard against any such inadvertent disclosures. Finally, the government's generic references to the expenditure of its resources and a "logistical burden," *id.* at 13, does not persuade the court to delay ordering the returns; the court is confident that the government can handle this task.

Accordingly, it is this 7th day of April, 2005,

**ORDERED** that the petitioner's motion to compel is **GRANTED**; and it is

**FURTHER ORDERED** that the respondents shall file factual returns regarding the petitioners within 45 days of this order.

**SO ORDERED.**

RICARDO M. URBINA
United States District Judge

2