IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDUL HALEEM, *et al.*,　　　　　　　　） | |
| 　　　　　　　　　　　　　　　　　　　） | |
| 　　　　　　Petitioners,　　　　　　　） | |
| 　　　　　　　　　　　　　　　　　　　） | |
| 　　v.　　　　　　　　　　　　　　　　） | Civil Action No. 05-CV-2376 (RBW) |
| 　　　　　　　　　　　　　　　　　　　） | |
| GEORGE W. BUSH,　　　　　　　　　　　） | |
| 　　　President of the United States, *et al.*,　） | |
| 　　　　　　　　　　　　　　　　　　　） | |
| 　　　　　　Respondents.　　　　　　　） | |

**RESPONDENTS' MOTION FOR ORDER TO SHOW CAUSE WHY CASE SHOULD
NOT BE DISMISSED FOR LACK OF PROPER "NEXT FRIEND" STANDING OR, IN
THE ALTERNATIVE, TO STAY PROCEEDINGS PENDING RELATED APPEALS,
AND MEMORANDUM IN OPPOSITION TO PETITIONERS' MOTION FOR
WRIT OF HABEAS CORPUS OR ORDER TO SHOW CAUSE**

Respondents hereby respectfully request that the Court order petitioners to show cause why the above-captioned petition for writ of habeas corpus, not directly authorized by the detainee at Guantanamo Bay for whom habeas relief is sought,[1] but instead brought by another detainee claiming to act as his "next friend," should not be dismissed for lack of proper next friend standing. The putative "next friend" detainee, Ahmed Abdel Aziz,[2] bears the burden of

---

[1] Respondents had previously indicated that they were unable to confirm the identity of Abdul Haleem, the detainee for whom habeas relief is sought. See Respondents' Memorandum in Opposition to Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction (dkt. no. 4) at 1. Based on identifying information recently provided by counsel for petitioners, however, respondents have confirmed the identity of Mr. Haleem as a detainee at Guantanamo Bay.

[2] Petitioners also attach to the petition a declaration from Gaillard T. Hunt, attorney for another Guantanamo Bay detainee who informed Mr. Hunt that Mr. Haleem allegedly desires the assistance of counsel to challenge his detention. See Petition, Ex. B. Although this other detainee is not named as the putative next friend in this case, to the extent that petitioners seek to designate this detainee as the next friend of Mr. Haleem, respondents challenge the legitimacy of

establishing his next friend status and justifying the exercise of the court's jurisdiction over this action. See Whitmore v. Arkansas, 495 U.S. 149, 163 (1990) ("'[N]ext friend' standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another."). To do so, he must satisfy the "two firmly rooted prerequisites" articulated by the Supreme Court in Whitmore: (1) he must demonstrate that the detainee on whose behalf he claims to file a petition for writ of habeas corpus cannot challenge the legality of his detention himself; and (2) he must have a significant relationship with this detainee in order to demonstrate that he is truly dedicated to the detainee's best interests. Id. at 163-64. The petition in the above-captioned case fails to meet either requirement. If petitioners are unable to demonstrate that the petition was filed by a legitimate next friend, the Court cannot exercise jurisdiction over the petition, and the case must be dismissed for lack of standing.[3]

---

this detainee as next friend for the reasons stated herein.

[3] Respondents have challenged the standing of other detainees purporting to act as "next friends" in a number of other cases, and some Judges of the Court have transferred such motions before them to Judge Oberdorfer for decision. See, e.g., Ahmed Doe v. Bush, No. 05-CV-1458 (ESH) (dkt. no. 8); Nabil v. Bush, No. 05-CV-1504 (RMC) (dkt. no. 8); Al Hawary v. Bush, No. 05-CV-1505 (RMC) (dkt. no. 10); Shafiiq v. Bush, No. 05-CV-1506 (RMC) (dkt. no. 10); Idris v. Bush, No. 05-CV-1555 (JR) (dkt. no. 6); Al Razak v. Bush, No. 05-CV-1601 (GK) (Minute Order dated November 14, 2005); Kabir v. Bush, No. 05-CV-1704 (JR) (dkt. no. 18); Qasim v. Bush, No. 05-CV-1779 (JDB) (dkt. no. 4); Zakirjan v. Bush, No. 05-CV-2053 (HHK) (dkt. no. 17); Muhammed v. Bush, No. 05-CV-2087 (RMC) (dkt. no. 11). Judge Oberdorfer dismissed the next friend petitioner in Idris v. Bush because the detainee for whom habeas relief was purportedly sought also filed a pro se petition for habeas corpus. See Idris v. Bush, No. 05-CV-1555 (JR) (dkt. no. 8). Judge Oberdorfer dismissed respondents' motions for order to show cause in Zakirjan v. Bush and Muhammed v. Bush as moot based on the petitioners there, subsequent to filing of the petitions, providing evidence of direct authorization of the petition by the detainees for whom habeas relief is sought in those cases. See Zakirjan v. Bush, No. 05-CV-2053 (HHK) (dkt. no. 24); Muhammed v. Bush, No. 05-CV-2087 (RMC) (dkt. no. 17). In some of the other cases, Judge Oberdorfer granted respondents' motion for order to show cause and set a hearing for December 5, 2005, which has been continued pending additional efforts by counsel to attempt to establish adequate next friend standing in these cases. See, e.g., Ahmed Doe v.

If the above-captioned case is not dismissed for lack of proper next friend standing, the case nonetheless should be stayed pending resolution of all appeals in <u>Khalid v. Bush</u>, <u>Boumediene v. Bush</u>, Nos. 04-CV-1142 (RJL), 04-CV-1166 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005), <u>appeals docketed</u>, Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 2, 2005), and <u>In re Guantanamo Detainee Cases</u>, No. 02-CV-0299, <u>et al.</u>, 355 F. Supp. 2d 443 (D.D.C. 2005), <u>appeal on petition for interlocutory appeal</u>, No. 05-5064 (D.C. Cir. Mar. 10, 2005).  The pending appeals will address the core issues in this case and, thus, determine how this case should proceed, if at all.  It makes no sense for this case to proceed in any substantive fashion prior to resolution of the appeals.  Further proceedings, including the submission of a factual return in response to an order to show cause, would require the expenditure of significant judicial and other resources that may be avoided as a result of the appeals, and, in any event, such proceedings very likely would have to be revisited or relitigated once the appeals are decided and the Court of Appeals provides guidance regarding handling of the claims in all of the Guantanamo detainee cases.

## ARGUMENT

**I.    Petitioners Should Establish Proper "Next Friend" Standing or the Above-Captioned Case Should be Dismissed.**

It is well-established that "before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue" under Article III of the Constitution.  <u>Whitmore</u>, 495 U.S. at 154.  The standing doctrine "ensure[s] that the plaintiff has a sufficient personal stake in the outcome of a dispute to render judicial resolution of it appropriate in a society that takes seriously both the idea of separation of

---

<u>Bush</u>, No. 05-CV-1458 (ESH) (dkt. nos. 10, 16).

powers and, more fundamentally, the system of democratic self-government that such separation serves." Hamdi v. Rumsfeld, 294 F.3d 598, 602-03 (4th Cir. 2002) (citation and internal quotations omitted).[4] "In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975). A habeas petitioner has proper standing only if the petition is "signed and verified by the person for whose relief it is intended or by someone acting in his behalf." 28 U.S.C. § 2242. If a petition is brought by someone acting on behalf of the person for whose relief the petition is intended, this "next friend" does not become a party to the action, but "simply pursues the cause on behalf of the detained person, who remains the real party in interest." Whitmore, 495 U.S. at 163.

Next friend standing is not automatically granted to anyone who seeks to pursue an action on behalf of another person, however. See id. Rather, consistent with the constitutional limits established by Article III, a litigant who asserts next friend standing bears the burden of satisfying the "two firmly rooted prerequisites" for next friend status articulated by the Supreme Court in Whitmore:

> First, a "next friend" must provide an adequate explanation — such as inaccessibility, mental incompetence, or other disability — why the real party in interest cannot appear on his own behalf to

---

[4] The cited 2002 decision of the Fourth Circuit in Hamdi ordered dismissal of a habeas case that a public defender and private citizen brought as purported next friends of Hamdi despite having no relationship with him. That deficiency was cured when Hamdi's father filed a legitimate next-friend petition bearing the same style, which eventually culminated in the 2004 decision of the Supreme Court in Hamdi v. Rumsfeld, 124 S. Ct. 2633 (2004). See Hamdi, 294 F.3d at 600 n.1, 606-07 & n.4; see also Hamdi, 124 S. Ct. at 2636. Of course, neither the fact that the defect was cured, nor the Supreme Court's ultimate decision in the properly filed habeas case, undermines or casts doubt on the Fourth Circuit's holdings concerning next friend standing in the defective case brought by the public defender and private citizen.

> prosecute the action. Second, the "next friend" must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a "next friend" must have some significant relationship with the real party in interest.

Id. at 163-64 (internal citations omitted).

The petition in the above-captioned case does not meet either prong of the Whitmore test. First, petitioners have failed to demonstrate that the detainee for whom habeas relief is sought cannot submit a petition on his own behalf. As explained in the Declaration of Frank Sweigart, the Department of Defense ("DoD") has notified each detainee at Guantanamo Bay of his right to file a petition for habeas corpus, and has provided each detainee with the address of the United States District Court in the event that he desires to submit his own petition to the Court.[5] See (Second) Sweigart Declaration, ¶¶ 3-5 (attached hereto as Exhibit A). As a result of these notifications, 56 pro se petitions for writ of habeas corpus have already been filed with the Court.[6] Furthermore, DoD has taken affirmative steps to facilitate legal representation for

---

[5] Detainees are afforded the opportunity regularly to send and receive mail through the mail system administered by DoD and through the International Committee for the Red Cross. Detainees are supplied pens, paper and envelopes regularly, and mail privileges cannot be revoked. See Sweigart Declaration, Ex. D.

[6] As of September 19, 2005, the date that the Sweigart Declaration was executed, there were 55 *pro se* petitions filed with the Court. See Khiali-Gul v. Bush, No. 05-CV-0877 (JR); Rahmattulah v. Bush, No. 05-CV-0878 (CKK); Mohammad v. Bush, No. 05-CV-0879 (RBW); Nasrat v. Bush, No. 05-CV-0880 (ESH); Slahi v. Bush, No. 05-CV-0881 (JR); Rahman v. Bush, No. 05-CV-0882 (GK); Bostan v. Bush, No. 05-CV-0883 (RBW); Muhibullah v. Bush, No. 05-CV-0884 (RMC); Mohammad v. Bush, No. 05-CV-0885 (GK); Wahab v. Bush, No. 05-CV-0886 (EGS); Chaman v. Bush, No. 05-CV-0887 (RWR); Gul v. Bush, No. 05-CV-0888 (CKK); Basardh v. Bush, No. 05-CV-0889 (ESH); Khan v. Bush, No. 05-CV-0890 (RMC); Nasrullah v. Bush, No. 05-CV-0891 (RBW); Shaaban v. Bush, No. 05-CV-0892 (CKK); Sohail v. Bush, No. 05-CV-0993 (RMU); Tohirjanovich v. Bush, No. 05-CV-0994 (JDB); Slahi v. Bush, No. 05-CV-0995 (JR); Mohammad v. Bush, No. 05-CV-0996 (JR); Khudaidad v. Bush, No. 05-CV-0997 (PLF); Al Karim v. Bush, No. 05-CV-0998 (RMU); Al-Khalaqi v. Bush, No. 05-CV-0999

detainees who have indicated a desire to challenge the legality of their detention by providing such detainees with a form to complete and mail to the American Bar Association ("ABA"), which has agreed to recruit volunteer counsel for detainees desiring representation. See (Second) Sweigart Declaration, ¶ 7. In addition, all detainees at Guantanamo Bay have the ability to send and receive mail, allowing them to contact family and friends, see Sweigart Declaration, Ex. D; supra, note 5, and they have been informed of the option of contacting friends and family to have them file habeas petitions on their behalf.

Given that all detainees have been notified of their right to submit petitions for writ of habeas corpus; that they have the ongoing opportunity to send mail to family, friends, and the Court; and that the ABA has agreed to offer the detainees assistance in securing legal representation, it cannot simply be assumed that the detainee seeking habeas relief in the above-captioned case cannot submit a petition on his own behalf. The next friend petition in this case, however, does just that. See Petition, ¶ 4 ("Because his friend has been denied access to legal

---

(RBW); Sarajuddin v. Bush, No. 05-CV-1000 (PLF); Kahn v. Bush, No. 05-CV-1001 (ESH); Mohammed v. Bush, No. 05-CV-1002 (EGS); Mangut v. Bush, No. 05-CV-1008 (JDB); Hamad v. Bush, No. 05-CV-1009 (JDB); Khan v. Bush, No. 05-CV-1010 (RJL); Zuhoor v. Bush, No. 05-CV-1011 (JR); Ali Shah v. Bush, No. 05-CV-1012 (ESH); Salaam v. Bush, No. 05-CV-1013 (JDB); Mammar v. Bush, No. 05-CV-1233 (RCL); Ahmed v. Bush, No. 05-CV-1234 (EGS); Baqi v. Bush, No. 05-CV-1235 (PLF); Abdulzaher v. Bush, No. 05-CV-1236 (RWR); Aminullah v. Bush, No. 05-CV-1237 (ESH); Ghalib v. Bush, No. 05-CV-1238 (CKK); Al Khaiy v. Bush, No. 05-CV-1239 (RJL); Altaiy v. Bush, No. 05-CV-1240 (RCL); Bukhari v. Bush, No. 05-CV-1241 (RMC); Pirzai v. Bush, No. 05-CV-1242 (RCL); Peerzai v. Bush, No. 05-CV-1243 (RCL); Alsawam v. Bush, No. 05-CV-1244 (CKK); Mohammadi v. Bush, No. 05-CV-1246 (RWR); Al Ginco v. Bush, No. 05-CV-1310 (RJL); Ullah v. Bush, No. 05-CV-1311 (RCL); Al Bihani v. Bush, No. 05-CV-1312 (RJL); Sadkhan v. Bush, No. 05-CV-1487 (RMC); Faizullah v. Bush, No. 05-CV-1489 (RMU); Faraj v. Bush, No. 05-CV-1490 (PLF); Khan v. Bush, No. 05-CV-1491 (JR); Ahmad v. Bush, No. 05-CV-1492 (RCL); Amon v. Bush, No. 05-CV-1493 (RBW); Idris v. Bush, No. 05-CV-1555 (JR). Since that date, one additional *pro se* petition has been filed. See Jamolivich v. Bush, No. 05-CV-2112 (RBW).

counsel and the courts of the United States, Ahmed Abdel Aziz acts as [Abdul Haleem's] Next Friend."). See also Ahmed v. Bush, No. 05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12) ("The petition presumes, rather than demonstrates through facts, that Ahmed has been denied access to the courts of the United States. . . . In light of the fact that several pro se petitions have been filed recently by Guantanamo Bay detainees, Ahmed's lack of access to this court cannot be presumed, but must be established.");[7] Hamlily v. Bush, No. 05-CV-0763 (JDB) (Order dated October 3, 2005) (dkt. no. 16) ("[The petition] states only that [Hamlily] is 'being held essentially communicado' and that 'his family members have not been able to contact U.S. counsel to file a petition on his behalf.' . . . There is a serious question as to whether this alone is sufficient to establish Hamlily's inability to prosecute this action on his own behalf.");[8] Ahmed

---

[7] The issue of next friend standing was raised sua sponte by Judge Roberts in Ahmed v. Bush, No. 05-CV-0665 (RWR), another Guantanamo Bay detainee case. Based on an observation that the petition presented scant facts demonstrating that the Whitmore requirements were satisfied, Judge Roberts ordered petitioners to file a memorandum and supporting materials tending to demonstrate that the detainee who purported to act as next friend in that case should be granted next friend standing. See Ahmed v. Bush, No. 05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12). Petitioners filed a memorandum in response to the Court's Order, in an attempt to demonstrate that both prongs of the Whitmore test were satisfied. See Ahmed v. Bush, No. 05-CV-0665 (RWR) (dkt. no. 13). Although respondents filed a response to petitioners' memorandum indicating that they took no position on petitioners' memorandum at that time, see Ahmed v. Bush, No. 05-CV-0665 (RWR) (dkt. no. 14), and the Court in that case did not issue any subsequent ruling on the issue, respondents now seek to challenge next friend standing in certain recently-filed Guantanamo Bay detainee cases in which the appropriate next friend standing requirements have not been satisfied.

[8] On October 31, 2005, Judge Bates discharged the order to show cause regarding next friend standing that he entered *sua sponte* in Hamlily v. Bush based on counsel's showing that the detainee in that case directly requested legal representation and authorized counsel's filing of the petition. See Order dated October 31, 2005 in Hamlily v. Bush, No. 05-CV-0763 (JDB) (dkt. no. 19) (discharging order to show cause and dismissing next friend petitioner in the case). Judge Bates noted, however, that "counsel's filing fail[ed] to address several of the serious deficiencies in next friend standing" raised in the Court's order to show cause. See id. at 2.

Doe v. Bush, No. 05-1458 (ESH), et al., (Order dated November 4, 2005) (dkt. no. 10) (Oberdorfer, J.) ("Petitioners do not explain why the detainees that they purport to represent as next friends are in a materially different position than the detainees who have filed petitions with this Court.").

Absent evidence that the detainee on whose behalf this case is filed cannot submit a petition on his own behalf, petitioners cannot demonstrate proper next friend standing, and the Court cannot exercise jurisdiction over the petition in the above-captioned case. See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990) ("It is a long-settled principle that standing cannot be 'inferred argumentatively from averments in the pleadings,' but rather 'must affirmatively appear in the record.'") (citations omitted).

The purported "next friend" in this case has also failed to satisfy the second requirement of the Whitmore test — he has not established that he has a "significant relationship" with the alleged detainee on whose behalf habeas relief is sought such that he is "truly dedicated to [his] best interests." See Whitmore, 495 U.S. at 163-64.[9] The requirement of a "significant

---

[9] The majority of Circuits that have been confronted with the issue have construed Whitmore to require a "significant relationship" as part of the second prong of the test for next friend standing. See Hamdi v. Rumsfeld, 294 F.3d 598, 604 (4th Cir. 2002) ("Whitmore is thus most faithfully understood as requiring a would-be next friend to have a significant relationship with the real party in interest."); Coalition of Clergy, Lawyers, and Professors v. Bush, 310 F.3d 1153, 1162 (9th Cir. 2002) ("Combining the 'significant relationship' requirement, however, with the 'dedicated to best interests' consideration . . . meets the concerns the Whitmore Court addressed."); T.W. v. Brophy, 124 F.3d 893, 897 (7th Cir. 1997) ("It follows, as the Court suggested in the Whitmore case, that not just anyone who expresses an interest in the subject matter of a suit is eligible to be the plaintiff's next friend – that he 'must have some significant relationship with the real party in interest'"); Amerson v. Iowa, 59 F.3d 92, 93 n.3 (8th Cir. 1995) (under Whitmore, the "next friend has [the] burden to establish . . . that she has some "significant relationship with [the] real party in interest"); Zettlemoyer v. Horn, 53 F.3d 24, 27 n.4 (3d Cir. 1995) (observing that "[t]he Whitmore Court also . . . suggested that the party 'must have some significant relationship with the real party in interest'"). See also Al Odah v. Bush, 321 F.3d

relationship" with the real party in interest is necessary to ensure that a next friend will genuinely pursue the interests of the person in custody (who at all times remains the real party in interest) and will not (1) merely use the litigation as a vehicle for advancing his own agenda or (2) assume he or she is in tune with the real party's desires and interests. See id. at 164 (cautioning against "intruders or uninvited meddlers" filing lawsuits on behalf of unwitting strangers).

Thus, under the "significant relationship" requirement, courts have generally limited next friend standing to close relatives such as parents, siblings, and spouses. See, e.g., Vargas v. Lambert, 159 F.3d 1161, 1168 (9th Cir. 1998) (mother); Hamdi, 294 F.3d at 600 n.1 (father); Smith ex rel. Missouri Pub. Defender Comm'n v. Armontrout, 812 F.2d 1050 (8th Cir. 1987) (brother); In re Ferrens, No. 4746, 8 F. Cas. 1158, 1159 (S.D.N.Y. 1869) (wife). Attorneys who have previously represented an individual seeking habeas corpus have also been permitted to act as next friends based on that pre-existing relationship. See Sanchez-Velasco, 287 F.3d at 1026 ("'[S]ome significant relationship' does exist when the would-be next friend has served in a prior proceeding as counsel for the real party in interest and did so with his consent."). Distant relatives or simple acquaintances generally do not have a sufficient relationship to establish next

---

1134, 1138 (D.C. Cir. 2003), rev'd on other grounds, Rasul v. Bush, 542 U.S. 466 (2004) (stating that the family members of Guantanamo detainees who filed habeas petitions on their behalf "demonstrated through affidavits that they are 'truly dedicated to the best interests of these individuals,' [and] that they have a 'significant relationship' with the detainees . . .") (citing Whitmore, 495 U.S. at 163-64). Although the Eleventh Circuit questioned whether Whitmore established "some significant relationship" as an independent requirement, it nevertheless noted the importance of a relationship in demonstrating whether a putative next friend "can show true dedication to the best interests of the person on whose behalf he seeks to litigate." Sanchez-Velasco v. Secretary of the Dep't of Corrections, 287 F.3d 1015, 1026-27 (11th Cir. 2002). See also Centobie v. Campbell, 407 F.3d 1149, 1151 (11th Cir. 2005) ("We conclude that Puzone is not 'truly dedicated to the best interests of the person on whose behalf [s]he seeks to litigate,' and she does not have 'some significant relationship with the party in interest.'") (citing Hauser v. Moore, 223 F.3d 1316, 1322 (11th Cir. 2000)).

friend standing, see, e.g., Davis v. Austin, 492 F. Supp. 273, 274-76 (N.D. Ga. 1980) (neither detainee's first cousin nor a minister who had counseled detainee could sue as next friend) (cited with approval in Whitmore, 495 U.S. at 164), and petitions filed by total strangers purporting to act as next friends are typically dismissed for lack of jurisdiction. See, e.g., Hamdi, 294 F.3d at 603-07 (dismissing petitions brought by a public defender and private citizen who had no relationship to the detainee).

In the above-captioned case, the putative next friend petitioner has failed to demonstrate that he has any sort of "significant relationship" with the detainee on whose behalf he claims to seek habeas relief. The "authorization" submitted by Ahmed Abdel Aziz contains boilerplate language stating that he understands what it means to act as a "next friend," and that he believes that the detainee on whose behalf he claims to seek habeas relief wants legal representation to challenge his detention, without stating any legitimate basis for his belief beyond the fact that he has also been detained at Guantanamo Bay.[10] See Petition, Ex. A (stating, "the following people who I know from being held in the custody of the U.S. have expressed the desire to have the legal assistance of counsel" without providing any basis for this knowledge or detailed descriptions of these detainees). This dearth of basic biographical and personal information about the detainee on whose behalf habeas relief is sought indicates that the purported next friend

---

[10] If a detainee were able to act as next friend for another detainee simply based on the mere fact that they are both detained at Guantanamo, detainees or prisoners could purport to bring mass habeas corpus petitions simply by being able to list the identities of those detained alongside them, a situation that is surely inconsistent with standing jurisprudence. See Othman v. Bush, No. 05-CV-2088 (RWR) (dkt. no. 2) ("The petition's characterization of Al Wahab as Othman's "companion" is an insufficient showing upon which to make any judgment about Al Wahab's fitness to serve[] as next friend. The companionship may be by dint of mere fortuity of co-location in detention with no more substance to the relationship than that.").

does not share any meaningful relationship with this detainee and, therefore, cannot be determined to be acting in his best interests.[11]  Because even acquaintances cannot satisfy the requirement of a significant relationship under Whitmore, and the minimal information presented in the petition indicates that the purported next friend merely knows of another detainee or, at best, is a mere acquaintance with the detainee on whose behalf he seeks habeas relief, Mr. Aziz has failed to demonstrate that he is "truly dedicated to [Mr. Haleem's] best interests."  Whitmore, 495 U.S. at 163.  Absent proof that evidences a significant relationship, petitioners cannot demonstrate proper next friend standing, and the Court cannot exercise jurisdiction over the petition in the above-captioned case.[12]

---

[11]  See also Ahmed v. Bush, No. 05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12) ("The petition does not provide basic personal facts about Ahmed, such as his citizenship, his age, whether he is married or has a family, the place of his arrest or capture, and the places of detention, if any, prior to his being transported to Guantanamo Bay.  The absence of such facts leaves the impression that Hassen does not know even this much about Ahmed and his situation."); Hamlily v. Bush, No. 05-CV-0763 (JDB) (Order dated October 3, 2005) (dkt. no. 16) ("The Court notes the total lack of any basic facts about Hamlily in the petition or other filings in this case -- most notably, the absence of any details concerning Hamlily's individual conditions of confinement (in contrast to the detainee population at large), including interrogations of Hamlily, inadequacies in his diet or medical care, or restrictions on, or interference with, the practice of his religion.  This lack of necessary factual information suggests that Aamer does not have a 'significant relationship' with Hamlily."); Othman v. Bush, No. 05-CV-2088 (RWR) ("The petition alleges no facts and attaches no declarations or affidavits about the length or nature of the acquaintance, the basis for the Court to trust that Al Wahab will pursue Othman's best interests, or even whether Al Wahab has discussed his proposed next friend status with Othman and received Othman's consent.").

[12]  Approximately 200 detainees at Guantanamo Bay have filed petitions for writ of habeas corpus through family members who arguably meet the "significant relationship" requirement.  See, e.g., Hatim v. Bush, No. 05-CV-1429 (RMU) (filed on behalf of two detainees by their siblings, Fatima Nasser Yahia Abdullah Kussrof and Ali Mohammed Saleh Al-Salahi); Rabbani v. Bush, No. 05-CV-1607 (JR) (filed on behalf of two detainees by their wives, Malika and Fouzia Ahmmed); Sadkhan v. Bush, No. 05-CV-1679 (RJL) (filed on behalf of detainee by his father, Jabbar Sadkhan Al-Sahlani).

In addition to the jurisdictional defect arising out of the lack of a significant relationship between the purported next friend and the party in interest, the phenomenon of detainees filing petitions purportedly on behalf of other detainees about whom they have little knowledge presents the practical difficulty of identifying the detainees for whom habeas relief is sought. Given the similar names or aliases of many of the approximately 500 individuals detained at Guantanamo Bay, it is often difficult, if not impossible, to correctly identify detainees based on the minimal information provided in the petitions. Respondents are often left trying to guess at a detainee's identity. Indeed, respondents have yet to identify approximately 90 purported petitioners as individuals presently detained at Guantanamo Bay. Moreover, there have already been two instances in which respondents incorrectly identified petitioners in the Guantanamo Bay detainee cases; errors which, unfortunately, were not discovered until counsel visited and interviewed these detainees at Guantanamo Bay. Requiring petitions to be filed either through direct authorization by the detainees on whose behalf habeas relief is sought, or through individuals who can demonstrate a significant relationship with the detainees, would diminish the identification issues that have plagued the parties in the Guantanamo detainee litigation thus far.[13]

In sum, the petition in the above-captioned case fails to satisfy the standing requirements articulated by the Supreme Court in <u>Whitmore</u>. Jurisdiction must be established and this case must be properly before the Court before any proceedings may commence, including entry of the

---

[13] In addition, the phenomenon of detainees purporting to act as next friends results in counsel improperly abusing the next friend device in order merely to solicit the Guantanamo detainee population for clients, while in the meantime seeking various forms of relief with respect to anyone a purported next friend detainee, such as Mr. Aziz, can remember having come in contact with.

Protective Order and counsel visits to Guantanamo Bay.[14] If petitioners are unable to demonstrate that the petition was filed by a legitimate next friend, the Court cannot exercise jurisdiction over the petition, and the case must be dismissed for lack of standing.

**II.     If the Court Does Not Dismiss the Above-Captioned Case, It Should be Stayed Pending Resolution of the Appeals of Decisions in the Other Guantanamo Detainee Cases Adjudicating Common Issues.**

If the Court finds that the petition in the above-captioned case was filed by a legitimate next friend,[15] the Court should stay proceedings in this case pending the resolution of the appeals in Khalid, Boumediene and In re Guantanamo Detainee Cases, which will determine whether and how this case should proceed.[16] The petition in this case raises legal issues that were squarely

---

[14] Even the Protective Order and counsel access procedures typically made applicable in Guantanamo detainee habeas cases provides that "[p]rior to being permitted access to the detainee," counsel must "provide evidence of his or her authority to represent the detainee." See Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al., 355 F. Supp. 2d 443 (D.D.C. Nov. 8, 2004), Ex. A, § III.C.1. (attached hereto as Exhibit B). Counsel has yet to provide sufficient evidence of their "authority to represent" the detainees for whom habeas relief is purportedly sought, i.e., to demonstrate the satisfaction of the requirements of next friend standing in this matter. The Protective Order thus contemplates counsel access to the detainees (including privileged mail correspondence and visits to Guantanamo Bay) only in cases properly before the Court.

[15] Even if the Court finds that petitioners have established next friend standing so that the Court can exercise jurisdiction over the petition, the next friend should not be permitted to serve in this capacity beyond the time when counsel are permitted to meet with the detainee for whom habeas relief is sought. See Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al., 355 F. Supp. 2d 443 (D.D.C. Nov. 8, 2004), Ex. A, § III.C. (permitting counsel two visits with a detainee before an authorization of representation by the detainee must be provided to respondents). At that time, counsel should determine this detainee's wishes concerning pursuing a challenge to his detention through the habeas petition in this case, such that the case can then either be converted into a direct petition or be dismissed.

[16] The Court has the authority to stay proceedings in habeas cases, even prior to the filing of a response. Pursuant to the Rules Governing Section 2254 Cases in the United States District

addressed by the opinions in In re Guantanamo Detainee Cases, Khalid, and Boumediene and that are raised in the appeals, including: (1) whether the petitioners have stated valid claims under the Fifth Amendment to the United States Constitution and, if so, whether the procedures implemented by respondents to determine the status of petitioners violate their Fifth Amendment rights; (2) whether the petitioners have stated valid claims under the Third Geneva Convention;[17] and (3) whether the petitioners have stated valid claims based on various other legal theories, including other Constitutional provisions, other international treaties, Military regulations, the

---

Courts (the "2254 Rules"), which are applicable to petitions for writ of habeas corpus other than those arising under 28 U.S.C. § 2254, such as the petitions in these cases, see 2254 Rule 1(b), a court may extend the deadline for responses to habeas petitions beyond the time limits set forth in 28 U.S.C. § 2243 — the 2254 Rules do not indicate a fixed deadline for responding to habeas petitions, and they supersede the time limits set forth in 28 U.S.C. § 2243. Rule 4 provides that "the judge must order the respondent to file an answer, motion, or other response within a fixed time, or to take other action the judge may order. . . ." See also Bleitner v. Welborn, 15 F.3d 652, 653-54 (7th Cir. 1994) ("[T]he Rules Governing Section 2254 Cases in the United States District Courts, which have the force of a superseding statute, 28 U.S.C. § 2072(b) . . . loosened up the deadline for responses. Rule 4 leaves it up to the district court to fix the deadline."); Castillo v. Pratt, 162 F. Supp. 2d 575, 577 (N.D. Tex. 2001) (denying § 2241 petitioner's request for expedited consideration because "[t]he discretion afforded by Rule 4 of the 2254 Rules "prevails" over the strict time limits of 28 U.S.C. § 2243"); Kramer v. Jenkins, 108 F.R.D. 429, 431 (N.D. Ill. 1985) (denying § 2241 petitioner's motion for correction of court scheduling order because "in the conflict between Rule 4 of the 2254 Rules and 28 U.S.C. § 2243, Rule 4 must prevail"). Furthermore, the 2254 Rules have provided courts with the discretion to consider the burdens involved in filing responses to habeas petitions when implementing case management schedules. See Advisory Committee Notes to 2254 Rules; see also Lonchar v. Thomas, 517 U.S. 314, 325 (1996) (stating that the 2254 Rules confer "ample discretionary authority" on district courts "to tailor the proceedings" in habeas cases). See also Landis v. North American Co., 299 U.S. 248, 254-55 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); id. at 256 (noting propriety of stay in cases "of extraordinary public moment").

[17] The D.C. Circuit held in Hamdan that the Third Geneva Convention does not give rise to claims enforceable in court. See Hamdan v. Rumsfeld, 415 F.3d 33, 40 (D.C. Cir. 2005), cert. granted, 74 U.S.L.W. 3108, 74 U.S.L.W. 3284, 74 U.S.L.W. 3287 (U.S. Nov. 7, 2005) (No. 05-184).

Administrative Procedure Act, the Alien Tort Statute, and customary international law. It makes no sense for proceedings related to the merits of this case to go forward when decisions from the D.C. Circuit on the related Guantanamo detainee appeals, which are proceeding in an expedited fashion, will determine the legal analyses applicable to this case and, indeed, whether and how this case should proceed. Thus, if the petition is not dismissed for lack of proper next friend standing, the Court should hold all proceedings in this cases in abeyance pending the outcome of the appeals of decisions by Judges of this Court in the other Guantanamo Bay detainee cases.[18]

Further, if the Court finds that the petition in the above-captioned case was filed by a legitimate next friend, it makes no sense for the government to process and submit a factual return[19] with respect to Mr. Haleem when the D.C. Circuit will be considering the proper scope of these habeas proceedings, including whether the claims can be dismissed without reference to

---

[18] In seeking a stay to the extent the next friend petitioner is determined to satisfy the applicable requirements, however, respondents do not intend thereby to block counsel access to properly represented petitioners. To that end, if proper next friend standing is found, respondents would not object to entry of the protective order previously entered in other Guantanamo detainee cases, along with appropriate supplementary orders, to permit such access. See Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al., 355 F. Supp. 2d 443 (D.D.C. Nov. 8, 2004); Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Dec. 13, 2004) (attached hereto as Exhibit C); Order Addressing Designation Procedures for "Protected Information" in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Nov. 10, 2004) (attached hereto as Exhibit D). Respondents' lack of objection to entry of these orders in a properly filed case, however, is without prejudice to their right to challenge any particular terms of these orders in any future proceedings as appropriate.

[19] A factual return for a petitioner in a Guantanamo detainee case typically has consisted of the record of proceedings before the Combatant Status Review Tribunal that confirmed petitioner's status as an enemy combatant properly subject to detention. The factual return is separate from briefing on legal issues in the cases. Factual returns include both classified and unclassified material.

specific factual returns.  See Khalid, 355 F. Supp. 2d 311 (dismissing petitioners' claims in their entirety).  Even if counsel had access to a factual return, they would not be able to share classified information in the returns with petitioner.  See Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al., 355 F. Supp. 2d 443 (D.D.C. 2004), ¶ 30.  Thus, there is no reason why counsel need access to a factual return at this time.[20]

Moreover, the submission of factual returns which, in any event, may ultimately be unnecessary, burdens the government's resources and risks the inadvertent disclosure of classified information.  Each factual return must be obtained from the Department of Defense, and then reviewed by agencies who provided source information to DoD to ensure that information disclosed to counsel in the returns is in accordance with all applicable statutes, regulations and Executive Orders.  Respondents must then prepare both public and classified versions of the factual returns for submission to the Court and counsel.  Each return can range from dozens to hundreds of pages, depending upon the circumstances.  Thus, respondents face an immense logistical burden to process and file the returns, especially on the short, simultaneous schedules being requested by petitioners in the various cases.  Further, submission of these returns vastly expands access to classified information contained in the returns, thereby increasing the risks of inadvertent or other disclosure or compromise of the information.  These burdens and risks, however, could be rendered completely unnecessary, depending on the

---

[20] In this vein, various Judges of this Court have declined to require factual returns during the pendency of the stay.  See, e.g., Sliti v. Bush, No. 05-CV-0429 (RJL) (dkt. no. 5); Imran v. Bush, No. 05-CV-0764 (CKK) (dkt. no. 6); Attash v. Bush, No. 05-CV-1592 (RCL) (dkt. no. 12).

outcome of the appeals.  Cf. Order Denying Motion for Reconsideration of Order Granting Stay Pending Appeal in In re Guantanamo Detainee Cases, 355 F. Supp. 2d 482 (staying cases so as to avoid expenditure of "substantial resources" and imposition of "significant burdens" that might not be necessary depending on outcome of appeal).

Although certain Judges of this Court have ordered respondents to submit factual returns in cases that are otherwise stayed, respondents oppose the submission of a factual return in the above-captioned case for the reasons stated herein.  If the Court determines that petitioners have established proper next friend standing and the submission of factual returns were to go forward at all, it could only be done pursuant to a coordinated and reasonable schedule, taking account of the fact that petitioners in all the recently filed cases are seeking factual returns and recognizing the logistical burdens posed by an undertaking to produce returns in the cases.  Given these circumstances, a schedule for the rolling production of factual returns in these cases (and potentially other cases) over the next 10 to 12 weeks would be appropriate.  In a number of other recent cases, the government has been given between 90 and 120 days to file factual returns, and respondents request that the Court impose a similar schedule, if proper next friend standing is found and the Court decides to require a factual return.  See e.g., Battayav, No. 05-CV-0714 (RBW) (dkt. no. 12) (imposing 120-day schedule); Al-Joudi, No. 05-CV-0301 (GK) (dkt. no. 26) (imposing 90-day schedule); Al-Wazan, No. 05-CV-0329 (PLF) (dkt. no. 37) (imposing 90-day schedule); Al-Anazi, No. 05-CV-0345 (JDB) (dkt. no. 21) (imposing 120-day schedule); Ameziane, No. 05-CV-392 (ESH) (dkt. no. 12) (imposing 90-day schedule); Qayed, No. 05-CV-0454 (RMU) (dkt. no. 5) (imposing 90-day schedule).

**CONCLUSION**

For the reasons stated, the Court should order petitioners to show cause why this case should not be dismissed for lack of proper next friend standing. If petitioners are able to establish proper standing, the Court should stay further proceedings in this case, except as noted above, pending resolution of the appeals of Judge Leon's decision in <u>Khalid</u> and <u>Boumediene</u> and Judge Green's January 31, 2005 decision in <u>In re Guantanamo Detainee Cases</u>. Petitioners' motion for writ of habeas corpus or order to show cause should be denied.

Dated: December 30, 2005

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

DOUGLAS N. LETTER
Terrorism Litigation Counsel

　　　/s/ Preeya M. Noronha　　　
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
ROBERT J. KATERBERG
NICHOLAS J. PATTERSON
ANDREW I. WARDEN
EDWARD H. WHITE
MARC A. PEREZ
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W. Room 7144
Washington, DC 20530
Tel: (202) 514-4107
Fax: (202) 616-8470

Attorneys for Respondents