# EXHIBIT 2



Department of Defense
Designated Civilian Official
Administrative Review of the Detention of Enemy Combatants
at U.S. Naval Base Guantanamo Bay, Cuba

September 14, 2004

MEMORANDUM FOR: SEE DISTRIBUTION

SUBJECT: Implementation of Administrative Review Procedures for Enemy Combatants Detained at U.S. Naval Base Guantanamo Bay, Cuba

References: (a) Deputy Secretary of Defense Order OSD 06942-04 of May 11, 2004
(b) Deputy Secretary of Defense Memo of June 4, 2004
(c) Deputy Secretary of Defense Memo of May 22, 2004
(d) Military Order of November 13, 2001, "Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism," 66 C.F.R. 57833 (November 16, 2001)

Enclosures: (1) Flow Diagram for Administrative Review Procedures
(2) Office for the Administrative Review of the Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba
(3) Administrative Review Board Process
(4) Administrative Review Board Process Step-by-Step
(5) Sample Nomination Questionnaire
(6) Sample Administrative Review Board Designation Letter
(7) Sample Designated Military Officer Designation Letter
(8) Sample Assisting Military Officer Designation Letter
(9) Designated Military Officer Qualifications, Roles, and Responsibilities
(10) Assisting Military Officer Qualifications, Roles, and Responsibilities
(11) Administrative Review Board Transcript Guide
(12) Sample Assessment and Recommendation Letter

1. Introduction.

a. The Deputy Secretary of Defense has established Administrative Review Procedures to determine annually if enemy combatants[1] detained by the Department of Defense at the U.S. Naval Base Guantanamo Bay, Cuba should be released, transferred or continue to be detained. This directive implements reference (a) in accordance with paragraph 7 of that order. Reference (b) amends reference (a); those amendments are reflected in this directive. A Designated Civilian Official (DCO) has been named by the Secretary of Defense to operate and oversee this program and to be the final decision authority. Reference (c) designates the undersigned as the DCO.

---

[1] An enemy combatant is defined as an individual who was part of or supporting Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who has committed a belligerent act or has directly supported hostilities in aid of enemy armed forces.

SUBJECT: Implementation of Administrative Review Procedures for Enemy Combatants Detained at U.S. Naval Base Guantanamo Bay, Cuba

b. The DCO hereby establishes the Office for the Administrative Review of the Detention of Enemy Combatants (OARDEC) at U.S. Naval Base Guantanamo Bay, Cuba. The DCO will oversee OARDEC's implementation of the Administrative Review Procedures.

c. In accordance with policy guidance set by the Secretary of Defense, the Administrative Review Procedures will encompass an administrative proceeding for consideration of all relevant and reasonably available information to determine whether the enemy combatant represents a continuing threat to the U.S. or its allies in the ongoing armed conflict against al Qaida and its affiliates and supporters (e.g., Taliban), and whether there are other factors that could form the basis for continued detention (e.g., the enemy combatant's intelligence value and any law enforcement interest in the detainee). The proceeding will result in a recommendation to release, transfer, or continue to detain each enemy combatant. This process is non-adversarial. It provides an enemy combatant the opportunity to review unclassified information relating to his continued detention, and to appear personally to present information relevant to his continued detention, transfer or release.

2. Authority. The Administrative Review Procedures were established by reference (a). In reference (b) the Deputy Secretary of Defense amended reference (a) to permit annual reviews of all DoD detainees in the Global War On Terrorism at U.S. Naval Base Guantanamo Bay, Cuba, except those whom the President has determined to be subject to a Military Commission under reference (d) until the disposition of any charges against them or the service of any sentence imposed by a Military Commission. The Administrative Review Procedures involve military authority exercised in the field in time of war. These proceedings are not governed by the Federal Rules of Evidence or equivalent state evidentiary rules. Because the process described in reference (a) has been instituted as a matter of discretion, the Secretary of Defense may suspend or amend the procedures set forth in reference (a) or any implementing directives at any time in his complete discretion.

3. Implementing Process. The process flow and notional timelines for the Administrative Review Procedures are outlined in enclosure (1). Functional breakdowns of this process flow, including detailed descriptions and decision criteria, are included as enclosures (2) through (4). Nominations for Administrative Review Board (ARB) Principals (i.e., ARB Members, Designated Military Officer (DMO) and Assisting Military Officer (AMO)) shall be made by the Director of OARDEC to the DCO using enclosure (5). The DCO shall make appointments using enclosures (6) through (8). The roles and responsibilities of the DMO and AMO are described in enclosures (9) and (10), respectively. A sample transcript guide by which to conduct an ARB proceeding is provided at enclosure (11). The ARB's assessment and recommendation to the DCO will be recorded in a document using the format specified at enclosure (12). Notification will be made to DoD and other U.S. Government agencies concerning the ARB's assessment and

SUBJECT: Implementation of Administrative Review Procedures for Enemy Combatants Detained at U.S. Naval Base Guantanamo Bay, Cuba

recommendation for each enemy combatant prior to the DCO's final decision. This implementing directive is subject to revision at any time at the discretion of the DCO.

DISTRIBUTION:
Secretary of State
Secretary of Defense
Attorney General
Secretary of Homeland Security
Director, Central Intelligence Agency
Assistant to the President for National Security Affairs
Counsel to the President
Deputy Secretary of Defense
Secretary of the Army
Secretary of the Navy
Secretary of the Air Force
Chairman of the Joint Chiefs of Staff
Director, Federal Bureau of Investigation
Director of Defense Agencies
Director, DOD Office of Detainee Affairs

# Flow Diagram for Administrative Review Procedures



Circled numbers reflect the numbers of the enclosures that discuss the boxed text.

# Office for the Administrative Review of the Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba

1. <u>Organization</u>. The OARDEC shall be headed by a Director who reports directly to the Designated Civilian Official (DCO). A Deputy Director, Chief of Staff, and Staff Judge Advocate (SJA) will each report directly to the OARDEC Director.

2. <u>Function</u>. The Director will staff and organize OARDEC to facilitate the operation of the Administrative Review Board (ARB) Procedures. The OARDEC staff will coordinate with other U.S. Government (USG) agencies, provide legal advice to the Director and the ARB panels, request and gather additional information as required during the review process, provide for translator services, and ensure information security. The Director shall keep the DCO informed of ongoing ARB proceedings and provide him feedback, pursuant to DCO decisions, on the transfer or release of enemy combatants and the agreed upon transfer conditions. The Director shall make nominations for ARB Principals (i.e., ARB Members, Designated Military Officers (DMOs) and Assisting Military Officers (AMOs)) to the DCO, who will make appointments of ARB Principals. The ARBs will provide their reports and recommendations to the DCO via the Director of OARDEC.

3. <u>Coordination and Case Management</u>. The OARDEC shall implement a case management and assignment system and develop a recommended case flow. The Deputy Assistant Secretary of Defense for Detainee Affairs (DASD-DA) will inform the OARDEC of any policy concerns or special issues that could affect the order of consideration of the cases as set out by the OARDEC. The DCO is the final decision-maker for case sequencing. DASD-DA will be responsible for obtaining input from all appropriate DoD entities and providing the OARDEC with an assessment of all relevant information on enemy combatants. The OARDEC will also solicit inputs, including threat assessments, from other USG agencies including: Department of Justice (DOJ), Federal Bureau of Investigation (FBI), Department of State (DoS), Central Intelligence Agency (CIA), the National Security Council (NSC) Staff, and Department of Homeland Security (DHS), prior to an ARB proceeding to ensure all relevant information is considered by the ARB. Concurrently, the OARDEC will coordinate with DoS to invite submission of information from the home State of an enemy combatant relevant to the ARB proceedings for that enemy combatant. As depicted in enclosure (1), information produced from this coordination will be provided to each ARB for consideration. OARDEC will notify DoD and other USG agencies concerning the ARB's assessment and recommendation for each enemy combatant prior to the DCO's final decision. Following the completion of a review board and DCO decision, the OARDEC will notify DASD-DA, DoS, and other relevant agencies of the decision. If the DCO decision is to release or transfer an enemy combatant, the DCO will notify the Secretary of Defense, the Deputy Secretary of Defense, and relevant USG agencies. The OARDEC will also provide periodic feedback to the DCO on the status of enemy combatant releases or transfers.

# Administrative Review Board Process

1. Purpose and Function.

    a. The Administrative Review Board (ARB) process will be managed through the Office for the Administrative Review of the Detention of Enemy Combatants (OARDEC) at U.S. Naval Base Guantanamo Bay, Cuba. This process will provide an annual review to determine the need to continue to detain enemy combatants during the course of the current armed conflict against al Qaida and its affiliates and supporters or explain why the enemy combatant's release would otherwise be appropriate. In accordance with policy guidance set by the Secretary of Defense, the ARBs shall conduct such proceedings as necessary to make a written assessment of whether the enemy combatant continues to pose a threat to the United States or its allies in the ongoing armed conflict against al Qaida and its affiliates and supporters, and/or whether there are other factors bearing upon the need for continued detention. Based on that assessment, the ARB shall provide a written recommendation to the Designated Civilian Official (DCO) using the format included at enclosure (12).

    b. The ARB shall conduct a comprehensive review of all reasonably available and relevant information. Although this review should include any prior detention evaluation, the ARB shall conduct its own proceeding and make an independent recommendation notwithstanding any prior determinations. In every case it reviews, an ARB shall make a recommendation to the DCO to:

        (1) Release the enemy combatant without limitations to his home State or a third State as appropriate;

        (2) Transfer the enemy combatant to his home State (or a third State as appropriate) with conditions agreed upon between that State and the United States; or

        (3) Continue to detain the enemy combatant in U.S. control.

2. ARB Structure.

    a. As set forth in reference (a), the ARB shall be composed of military officers appointed by the DCO, who will sit in panels of three members each. Each three-member panel will include a Presiding Officer (PO), who shall carry a service grade of O-6, and at least one officer with experience in the field of intelligence. The role and duties of ARB panel members are described in reference (a). Military officers assigned to serve as ARB members shall be those who are, in the DCO's view, qualified for the duty by reason of education, training, experience, length of service, temperament, and objectivity. Panel members shall carry a service grade of O-4 or higher (except the Presiding Officer), have a minimum security clearance of TOP SECRET, and may be selected from among all the military services. A prospective ARB panel member must complete a nomination questionnaire (enclosure (5)) and be appointed by the DCO prior to serving on an ARB panel.

b. Each ARB panel shall be assisted by a Designated Military Officer (DMO) in accordance with enclosure (9). Military officers assigned to serve as DMOs shall be those who are, in the DCO's view, qualified for the duty by reason of education, training, experience, length of service, temperament, and objectivity. DMOs shall carry a service grade of O-4 or higher, and shall be selected from among all the military services. DMOs must have a minimum security clearance of TOP SECRET. DMOs shall not be Judge Advocates or Chaplains.

c. Each ARB panel will assign an Assisting Military Officer (AMO) to assist the enemy combatant in reviewing the unclassified summary, and in preparing for and presenting information to the ARB, in accordance with enclosure (10). The AMO is not an advocate for or against the continued detention of the enemy combatant under review. Individuals assigned to serve as AMOs shall be those who are, in the DCO's view, qualified for the duty by reason of education, training, experience, length of service, temperament, and objectivity. AMOs shall carry a service grade of O-4 or higher, and shall be selected from among all the military services. AMOs must have a minimum security clearance of TOP SECRET. AMOs shall not be Judge Advocates or Chaplains. In the review of the detention of an enemy combatant, the AMO and DMO shall not be the same person.

d. DMOs and AMOs shall not be involved in ARB cases in which they previously had a principal role in the Combatant Status Review Tribunal (CSRT) process (i.e., Tribunal member, Personal Representative, or Recorder) or any role in a military commission for the same enemy combatant.

e. Board reporters/paralegals shall be qualified by their respective services to be stenographers and must have a minimum security clearance of TOP SECRET.

f. OARDEC shall ensure that it has a sufficient number of TOP SECRET/SCI eligible personnel to nominate to the DCO as potential ARB Principals in cases where access to SCI material may be required.

3. ARB Proceedings.

a. Step-by-step guidelines for the ARB proceeding are set forth in enclosure (4). Prior to the enemy combatant's board, he shall be provided notice of the board and be provided a written unclassified summary sufficiently in advance of the board so as to permit him to prepare his presentation to the ARB. The DMO shall ensure the unclassified summary contains primary factors favoring continued detention of the enemy combatant and the primary factors favoring release or transfer. Unless the enemy combatant declines to participate in the ARB proceeding, he shall be provided a meaningful opportunity to be heard and to present information to the ARB (participation means physical presence at the board). When classified information is presented, the ARB shall close the proceedings to everyone except ARB Principals and an appropriately cleared board reporter or paralegal. The enemy combatant shall never be in attendance at a classified session of the board.

b. All ARB sessions, whether classified or unclassified, shall be electronically audio taped. The ARB PO or DCO may request transcription of any particular proceeding or a portion

thereof. The recordings shall be properly marked with identifying case information and appropriate classification markings.

c. An enemy combatant may decline to participate in the ARB proceedings. In that case the ARB proceeding shall be conducted in the absence of the enemy combatant.

d. There is no provision in references (a) and (b) for the attendance of witnesses at the ARB. Instead, an enemy combatant (or the AMO) may provide information to the ARB that he has gathered, and the DMO shall provide any written information gathered from the enemy combatant's home State and his relatives.

e. Information to be considered by the ARB. The ability to make an informed, objective, and reasoned independent recommendation to the DCO on the disposition of an enemy combatant's case is dependent upon the ARB's obtaining and reviewing all reasonably available and relevant information.

(1) The ARB or the DMO may request such reasonably available information in the possession of an agency of the U.S. Government bearing on the issue of whether an enemy combatant poses a continuing threat to the United States or its allies, including information generated in connection with any prior enemy combatant determinations, as well as any records, determinations, or reports generated in connection with such proceedings.

(a) For any relevant information not provided in response to an ARB's or DMO's request, the agency holding the information shall be requested to provide either an acceptable substitute for the information requested or a certification as provided in paragraph 4c of this enclosure.

(2) These proceedings are not governed by the Federal Rules of Evidence or equivalent state evidentiary rules but are intended to permit the consideration of all relevant information presented by the United States, the enemy combatant, and, when provided, his home State and relatives. The ARB may consider any reasonably available information that is relevant to its determination of whether the enemy combatant poses a continuing threat to the United States or its allies in the ongoing armed conflict against al Qaida and its affiliates and supporters, and any other factors bearing upon the need for continued detention.

(3) During its review, the ARB shall make an assessment of the reliability of any information presented in the proceeding. The normal indicators of reliability can include whether the information is specific as to the matters described, whether the information is corroborated by other information, and whether the source of the information appears credible. Conversely, information that is vague, unsupported, or not established through reliable sources generally is considered less reliable and may be given less weight in the ARB's determinations.

(a) The ARB shall not render an opinion on any legal issues related to an enemy combatant's case, but shall note such issues as may come to its attention in its report to the DCO.

3

(b) The ARB shall include in the record of proceedings a copy of, or reference to, any written information presented to the ARB but not considered due to the ARB's determination that the information was irrelevant or unreliable.

(4) The ARB may be provided with conflicting information as to a particular enemy combatant's case from government or allied sources and the enemy combatant, his relatives, or his home State. The ARB is required to consider any relevant and reasonably available information concerning the enemy combatant, including information submitted by the enemy combatant. The ARB is required to make an independent assessment and recommendation based on its consideration of all the information presented to it. The ARB will determine, in its sole discretion, the weight to be given to any particular source of information on a case-by-case basis.

f. Standards and factors to be considered by the ARB.

(1) Standard for threat assessments and other factors bearing on continued detention of an enemy combatant.

(a) The ARB will make its assessment as to whether there is a reason to believe that an enemy combatant continues to pose a threat to the United States or its allies following review of all reasonably available relevant information, classified and unclassified, from U.S. Government or allied sources, as well as information presented by the enemy combatant and, when requested and presented in a timely manner, his relatives and his home State.

(b) The ARB shall review each case independently and base its recommendation upon the information presented in a particular enemy combatant's proceeding, to include information considered by the ARB under its additional fact-gathering authority under reference (a). The ARB may consider relevant information from other enemy combatants' proceedings, but the disposition in those other cases is not determinative of the ARB's recommendation in the case under review.

(c) Other factors. Although the threat determination for each detained enemy combatant by the ARB is the most critical element in the review process, the ARB may consider other factors, in accordance with policy guidance set by the Secretary of Defense, in evaluating the need to continue detaining an enemy combatant. These other factors can include, but are not limited to, the likelihood that the enemy combatant may be subject to trial by military commission, and whether the enemy combatant is of continuing intelligence value.

(d) ARB Principals will be provided threat assessment guidelines to assist them in understanding the assessments made by various agencies. Although these guidelines may be used by the ARB in assessing the threat posed by the enemy combatant, the ARB must make its own independent assessment using the following factors:

(1) The nature and circumstances surrounding the enemy combatant's apprehension and subsequent detention;

(2) Intelligence or criminal investigation information developed on an enemy combatant prior or subsequent to apprehension;

(3) Any statements made by the enemy combatant prior to or while in detention, whether corroborated or uncorroborated by other information;

(4) Cooperation of the enemy combatant with U.S. Government or allied representatives;

(5) Conduct, including misconduct, while in detention, insofar as it bears on the question of whether the enemy combatant poses a current threat;

(6) Information provided by the enemy combatant's home State, including whether the home State will or will not accept return of the enemy combatant and the circumstances of, or any conditions related to, such return:

(7) Information provided by the enemy combatant's relatives;

(8) Information provided by other relevant U.S. Government agencies;

(9) Any U.S. Government psychological or behavioral assessments conducted of the enemy combatant;

(10) The enemy combatant's age, work history, health, education, marital and family status;

(11) The likelihood of the enemy combatant again taking up arms against the United States or its allies;

(12) Any statements made by or on behalf of the enemy combatant at the ARB proceedings; and

(13) Any other information as deemed appropriate by the ARB.

(e) The ARB's assessment of whether an enemy combatant remains a continuing threat requires careful consideration of all of the foregoing applicable factors, a balancing of these factors, and all other relevant information within the context of each enemy combatant's case.

(f) To the extent that inconsistencies arise concerning the information presented, the ARB shall make its own determination as to its accuracy, relative value and reliability. The ARB shall permit an enemy combatant to present information that counters the government's information presented during the unclassified part of the board within the constraints of security regulations.

g. After the ARB makes its assessment and recommendation, the record of proceedings is forwarded to the DCO via the Director of OARDEC. OARDEC will notify DoD and other USG agencies of the ARB's assessment and recommendation for each enemy combatant. The SJA of

OARDEC will provide a legal sufficiency review of the ARB proceeding, and the Director will forward that review and the record to the DCO.

h. The DCO reviews the ARB assessment, record of proceeding, recommendation, minority assessment and recommendation (if any) and the SJA's opinion of legal sufficiency and may request additional information from the ARB as he deems necessary. The DCO decides whether to release, transfer with conditions, or continue to detain the enemy combatant.

i. If, after his review of the ARB's recommendation, the DCO orders continued detention of an enemy combatant, OARDEC will schedule the next review date to ensure an annual review.

4. Handling of Classified Material.

a. All parties shall have due regard for classified information and safeguard it in accordance with all applicable instructions and regulations. The ARB, DMO and AMO shall coordinate with an Information Security Officer (ISO) in the handling and safeguarding of all classified material before, during, and after the ARB proceeding.

b. The Director of OARDEC and the ARB POs have the authority and duty to ensure that all proceedings of, or in relation to, an ARB under this directive shall comply with Executive Order 12958 regarding the handling, dissemination, and protection of national security information in all respects. Classified information and law enforcement-sensitive information may be used in the ARB process only with the concurrence of the originating agency. Classified information and law enforcement-sensitive information that the originating agency declines to authorize for use in the ARB process are not reasonably available.

c. For any information not reasonably available, the originating agency will be requested to provide the ARB with a comparable substitute for the information requested or certification that none of the withheld information is relevant to the determination as to whether an enemy combatant should continue to be detained because he is a threat to the United States or its allies or whether there are other factors bearing upon the need for continued detention such as his intelligence value, and any law enforcement interest. Acceptable substitutes may include an unclassified or, if not possible, a lesser classified, summary of the information; or a statement as to the relevant facts the information would convey.

d. The Director of OARDEC, the OARDEC staff, ARB Principals, and any other participants in the ARB process do not have the authority to declassify or change the classification level of any classified information.

6                                                          Encl (3)

## Administrative Review Board Process Step-by-Step

1. Preliminary Procedures.

a. The Designated Civilian Official (DCO) identifies enemy combatant as eligible for ARB review. If the President of the United States has made a formal "reason to believe" determination in accordance with reference (d) or the enemy combatant has been charged in a Military Commission, that enemy combatant is not eligible for ARB review until the disposition of any charges against him or the service of any sentence imposed on him by a Military Commission.

b. The Deputy Assistant Secretary of Defense for Detainee Affairs (DASD-DA) will inform the OARDEC of any policy concerns or special issues which would affect the order of consideration of the cases proposed by OARDEC. The OARDEC will develop a proposed case flow for approval by the DCO. The DCO makes the final decision on case order.

c. The Director of OARDEC, in conjunction with the DASD-DA and with the concurrence of the DCO, determines whether solicitation of information from the enemy combatant's home State and family is consistent with national security.

d. Unless determined to be inconsistent with national security, the Director of OARDEC requests the Department of State (DoS) to notify the enemy combatant's home State of the upcoming ARB, invite submission of information from the home State, and request that the home State notify the enemy combatant's relatives and inform them of the opportunity to submit any relevant information through that home State's submission.

e. The DCO selects the ARB Principals based on nominations by the Director of OARDEC.

f. The DCO, through the Director of OARDEC, provides notice of the ARB proceeding to the DoS, Department of Justice (DOJ), Central Intelligence Agency (CIA), the National Security Council (NSC) Staff, Department of Homeland Security (DHS), the DASD-DA, and the Joint Staff in writing and with sufficient time (approximately 30 days) to enable the agencies to provide information relevant to the enemy combatant's release or continued detention.

g. The DMO gathers and reviews all reasonably available threat and other information relevant to the enemy combatant, including any information provided by the home State, the enemy combatant's family, and other U.S. agencies. The DMO provides this case information to the ARB and the AMO.

h. The DMO shall ensure an unclassified written summary is prepared and that such summary contains primary factors favoring continued detention of the enemy combatant and the primary factors favoring release or transfer (specifying conditions as applicable). In preparing such a summary, the DMO may use and modify, as necessary, the unclassified summary used in the Combatant Status Review Tribunal. A sample unclassified summary is provided at page 5 of enclosure (9).

i. In accordance with standard security procedures, the DMO must secure originating agency clearance in the event the unclassified summary is derived from classified or sensitive law enforcement information originating from DoD, DoS, DOJ, CIA, or DHS. Once this clearance is received, the DMO provides the AMO with the unclassified summary and a classified summary, if one is prepared.

j. The DMO arranges for the translation of the unclassified summary into a language understood by the enemy combatant and provides that translation to the AMO.

k. The AMO reviews all information provided by the DMO and meets with his or her assigned enemy combatant to discuss only unclassified information.

l. The AMO explains the nature of the ARB procedure to the enemy combatant and offers to assist him in making a presentation to the ARB. The AMO also informs the enemy combatant that, if he desires, the AMO will make a presentation to the ARB on the enemy combatant's behalf. Part B of enclosure (10) provides guidelines for assisting the enemy combatant.

m. The enemy combatant makes an election on whether he wants to appear personally before the ARB proceeding (participation means physical presence at the ARB session.). A sample election form is attached as page 4 of enclosure (10). If the enemy combatant declines to participate, the AMO will request the enemy combatant make a written statement and sign it. The written statement and its English translation will be appended to the election form. Illiterate detainees will be provided the opportunity to provide a statement to the AMO, and the translation will be appended to the election form. If the enemy combatant declines to provide a written waiver, the AMO will indicate this on the election form.

2. The ARB Session.

a. The ARB holds a board session. Sessions in the presence of the enemy combatant shall only contain unclassified information. A qualified translator shall be present if necessary. If the enemy combatant is present, the ARB PO then adjourns the unclassified portion of the board session and excuses the enemy combatant and the translator. If the enemy combatant is not present, the entire session may be classified and there is no reason to adjourn and reconvene.

b. All ARB sessions (both classified and unclassified) shall be electronically recorded on audiotape.

c. The enemy combatant makes a statement if he desires.

d. Witnesses will not be allowed to testify or present information.

e. Once the unclassified session with the enemy combatant is adjourned, the ARB PO reconvenes with only the ARB Members, the DMO, and the AMO, and the board reporter or paralegal present to receive and assess classified information.

Encl (4)

f. If the ARB believes additional information is necessary before it can make a recommendation, the ARB may seek additional facts. It may, among other things,

(1) Submit written questions to the DMO or the AMO;

(2) Request further behavioral assessments of the enemy combatant;

(3) Request further questioning of any other combatants who have had contact with the enemy combatant under review while in detention to the extent that the Combatant Commander determines that such questioning is consistent with ongoing intelligence collection;

(4) Seek other information that may be readily obtained.

g. After the AMO and DMO present information, and additional information is gathered, if necessary, the ARB adjourns for deliberation and voting. Only voting members of the ARB will remain in the room for this session. This session will not be electronically recorded.

3. ARB Assessment and Record Preparation, Deliberations, and Vote.

a. The ARB members deliberate and vote as to whether they will recommend that an enemy combatant should be further detained, transferred, or released. Each member's vote is accorded equal weight. The ARB's assessment and recommendation shall be reached by a majority vote of the members of the panel. In the event that a recommendation is not unanimous, the dissenting board member shall submit a minority assessment and recommendation to the DCO. That report shall take the same form as the written assessment and recommendation to be submitted by the majority.

b. The ARB, or the DMO under the ARB's direction, prepares a written assessment on whether the enemy combatant constitutes a continuing threat to the United States or its allies, or should otherwise continue to be detained.

c. The ARB or the DMO under the ARB's direction prepares a record of the proceeding.

d. The ARB submits the assessment, record of proceedings, recommendation, and minority assessment and recommendation (if any) to the DCO, via the Director of OARDEC.

4. OARDEC Review and Forwarding.

a. OARDEC will notify DoD and other U.S. Government agencies of the ARB's assessment and recommendation for each enemy combatant. Such notification will be provided no less than five days before the DCO's decision.[2]

---

[2]In the event the DCO anticipates releasing or transferring an enemy combatant for whom the ARB recommended continued detention, the DCO will similarly first notify DoD and U.S. Government agencies of his determination before making a final decision.

3                                            Encl (4)

b.  The Staff Judge Advocate (SJA) of OARDEC shall conduct a legal sufficiency review of all cases.  The SJA shall render an opinion on the legal sufficiency of the ARB proceedings and forwards the assessment, record of proceedings, recommendation, and minority assessment and recommendation (if any) to the Director with his or her determination of legal sufficiency.

c.  The Director of OARDEC reviews the ARB's assessment, record of proceedings, recommendation, and minority assessment and recommendation (if any), and the SJA's opinion of legal sufficiency, and forwards it to the DCO with an endorsement on the ARB's recommendation.

5.  DCO Review Process.

a.  The DCO reviews the ARB assessment, record of proceeding, recommendation, minority assessment and recommendation (if any) and the SJA's opinion of legal sufficiency.

b.  The DCO may request additional information from the ARB as he deems necessary.

c.  The DCO decides whether to release, transfer with conditions, or continue to detain the enemy combatant.

d.  The DCO will notify the Secretary of Defense of his decision and coordinate within DoD and with the DoS and DHS (if necessary) to implement any enemy combatant release or transfer according to established Deputy Secretary of Defense policy.  The OARDEC will provide periodic feedback to the DCO on the status of enemy combatant releases or transfers.

Encl (4)

# Sample Nomination Questionnaire



Department of Defense
Office for the Administrative Review of the Detention
of Enemy Combatants at
U.S. Naval Base Guantanamo Bay, Cuba

As a candidate to become an Administrative Review Board Member, Designated Military Officer or Assisting Military Officer, please complete the following questionnaire and provide it to the Director of the Office for the Administrative Review of the Detention of Enemy Combatants (OARDEC). Because of the sensitive personal information requested, no copy will be retained on file outside of the OARDEC.

1. Name (Last, First MI) _____ 2. Rank/Grade_____

3. Date of Rank_____ 4. Service_____ 5. Active Duty Service Date _____

6. Designator/MOS _____7. Date Current Tour Began_____

8. Security Clearance Level _____ 9. Date of clearance_____

10. Military Awards / Decorations:_____

_____

11. Current Duty Position_____ 12. Unit:_____

13. Date of Birth _____

14. Civilian Education. College/Vocational/Civilian Professional School:_____

15. Date graduated or dates attended (and number of years), school, location, degree/major:_____

_____

16. Military Education. Dates attended, school/course title._____

_____

_____

17. Duty Assignments. Last four assignments, units, and dates of assignments._____

_____

_____

_____

18. Have you had any close relative or friend killed or wounded in Afghanistan or Iraq?  _____

Explain._____

_____

_____

Encl (5)

19. Have you had any close relative or friend killed, wounded, or impacted by the events of September 11, 2001? _____ Explain._____

_____

_____

20. Have you ever been in an assignment related to enemy prisoners of war or enemy combatants?

_____ Explain._____

_____

_____

21. Do you believe you may be disqualified to serve as an ARB member, DMO or AMO for any reason? Explain._____

_____

_____

22. Could the inadvertent release of your name as a participant in an ARB affect your ability to objectively recommend the continued detention of an enemy combatant?

Y/N_____Explain._____

_____

_____

SIGNATURE OF OFFICER:_____DATE: _____

Recommended Action: Approve _____Disapprove _____Director, OARDEC

Approved_____ Disapproved_____DCO

Encl (5)

**Sample Administrative Review Board Designation Letter**



Department of Defense
Designated Civilian Official
Administrative Review of the Detention of Enemy Combatants
at U.S. Naval Base Guantanamo Bay, Cuba

Ser

MEMORANDUM FOR (RANK, NAME, SERVICE OF BOARD MEMBER)

SUBJECT: Appointment to the Administrative Review Board (ARB) for the Detention of
Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba

References: (a) Deputy Secretary of Defense Order OSD 06942-04 of 11 May 2004
(b) Implementing Directive

In accordance with reference (a), you are hereby appointed as a member of an
Administrative Review Board (ARB) to determine the disposition of enemy combatants detained
at U.S. Naval Base Guantanamo Bay, Cuba. Your appointment is effective immediately and you
are directed to report for temporary assignment to the Department of Defense, Office for the
Administrative Review of the Detention of Enemy Combatants (OARDEC) until such time as
determined by the Designated Civilian Official (DCO).

General procedural instructions are contained in reference (b). You are to familiarize
yourself with references (a), (b) and other pertinent information prior to convening of the board.

You are directed not to discuss the details of any ARB proceedings with anyone not
directly involved with board proceedings and preparation.

Your appointment to the ARB is a very important matter, and your selection to the board
was based upon your training, education, experience, length of service, temperament and
objectivity.

Encl (6)

## Sample Designated Military Officer Designation Letter



Department of Defense
Designated Civilian Official
Administrative Review of the Detention of Enemy Combatants
at U.S. Naval Base Guantanamo Bay, Cuba

Ser

MEMORANDUM FOR (RANK, NAME, SERVICE OF DMO)

SUBJECT: Appointment as Designated Military Officer (DMO) for the Administrative Review of the Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba

References: (a) Deputy Secretary of Defense Order OSD 06942-04 of 11 May 2004
(b) Implementing Directive

In accordance with reference (a), you are appointed as a Designated Military Officer (DMO) of an Administrative Review Board (ARB) to determine the disposition of enemy combatants detained at U.S. Naval Base Guantanamo Bay, Cuba. Your appointment is effective immediately and you are directed to report for temporary assignment to the Department of Defense, Office for the Administrative Review of the Detention of Enemy Combatants (OARDEC) until such time as determined by the Designated Civilian Official (DCO).

General procedural instructions are contained in reference (b). You are to familiarize yourself with references (a), (b) and other pertinent information prior to convening of the board.

You are directed not to discuss the details of any ARB proceedings with anyone not directly involved with board proceedings and preparation.

Your appointment as a DMO is a very important matter, and your selection to the board was based upon your training, education, experience, length of service, temperament and objectivity.

Encl (7)

## Sample Assisting Military Officer Designation Letter



Department of Defense
Designated Civilian Official
Administrative Review of the Detention of Enemy Combatants
at U.S. Naval Base Guantanamo Bay, Cuba

Ser

MEMORANDUM FOR (RANK, NAME, SERVICE OF AMO)

SUBJECT:  Appointment as Assisting Military Officer (AMO) for the Administrative Review of
the Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba

References:  (a) Deputy Secretary of Defense Order OSD 06942-04 of 11 May 2004
(b) Implementing Directive

In accordance with reference (a), you are appointed as an Assisting Military Officer
(AMO) of an Administrative Review Board (ARB) to determine the disposition of enemy
combatants detained at U.S. Naval Base Guantanamo Bay, Cuba. Your appointment is effective
immediately and you are directed to report for temporary assignment to the Department of
Defense, Office for the Administrative Review of the Detention of Enemy Combatants
(OARDEC) until such time as determined by the Designated Civilian Official (DCO).

General procedural instructions are contained in reference (b). You are to familiarize
yourself with references (a), (b) and other pertinent information prior to convening of the board.

You are directed not to discuss the details of any ARB proceedings with anyone not
directly involved with board proceedings and preparation.

Your appointment as an AMO is a very important matter, and your selection to the board
was based upon your training, education, experience, length of service, temperament and
objectivity.

Encl (8)

## Designated Military Officer Qualifications, Roles, and Responsibilities

1. The role and duties of the Designated Military Officer (DMO) are described in reference (a). Further guidance is provided below.

   a. Qualifications of the DMO

     (1) For each case, the DCO shall select a DMO from nominations by the Director of OARDEC. Military officers assigned to serve as DMOs shall be those who are, in the DCO's view, qualified for the duty by reason of education, training, experience, length of service, temperament, and objectivity.

     (2) DMOs shall carry a service grade of O-4 or higher, and shall be selected from among all the military services.

     (3) DMOs must have a minimum security clearance of TOP SECRET.

     (4) DMOs shall not be Judge Advocates or Chaplains.

     (5) DMOs shall not be involved in cases in which they previously had a principal role in the Combatant Status Review Tribunal (CSRT) process (i.e., Tribunal member, Personal Representative, or Recorder) or any role in a military commission for the same enemy combatant.

     (6) In the review of an enemy combatant, the AMO and the DMO shall not be the same person.

   b. Role of the DMO

     (1) The DMO is not an advocate for or against the continued detention of the enemy combatant under review.

     (2) The DMO has a duty to present to the ARB all relevant and reasonably available information in the possession of DoD or provided by other government agencies with regard to the existence or absence of any threat posed by the enemy combatant under review, or with regard to the continued detention of the enemy combatant.

     (3) The DMO shall have due regard for classified information and safeguard it in accordance with applicable instructions and regulations. The DMO shall coordinate with an Information Security Officer (ISO) in the safeguarding of classified material during the ARB process.

   c. Responsibilities of the DMO

     (1) For each assigned enemy combatant case under review, the DMO will obtain and examine all reasonably available classified information in the possession of DoD and all

information submitted by other U.S. agencies and the enemy combatant's home State. This information will be assembled and may, at the PO's discretion, be summarized in a classified summary. A sample classified summary is included at page 4 of this enclosure.

(2) The DMO will permit the assigned Assisting Military Officer (AMO) access to all information and documentation in the possession of the DMO.

(3) The DMO will ensure that coordination is maintained with Joint Task Force-Guantanamo Bay and the Criminal Investigative Task Force to deconflict any other ongoing activities and arrange for detainee movements and security.

(4) The DMO will also ensure an unclassified written summary of the factors favoring release or transfer (with conditions as applicable) and the factors favoring continued detention is prepared. A sample summary is included at page 5 of this enclosure. In preparing such a summary, the DMO may use and modify, as necessary, the unclassified summary used in the Combatant Status Review Tribunal. Also, the DMO will note the source of information for each item in the summary if the information originated in a U.S. government agency other than DoD and such information can be provided in unclassified form. The DMO will request permission from the non-DoD agency to share the information with the enemy combatant. In the event that the DMO is unable to obtain permission to share the non-DoD originated information, the DMO will obtain a comparable substitute for the information or certification that none of the withheld information is relevant to the determination as to whether the enemy combatant should continue to be detained because he is a threat to the United States or its allies. The DMO will then prepare a revised unclassified written summary so that it does not contain information derived from the non-consenting agency.

(5) The DMO will provide the classified (if any) and unclassified summaries to the AMO. The AMO will share only the unclassified version with the enemy combatant.

(6) Upon request of the ARB, the DMO will present information orally to the ARB. The DMO shall also answer questions, if any, asked by the ARB.

(7) The DMO will record the ARB's findings and prepare a record of proceedings, the ARB's recommendations and assessment and, if applicable, the minority assessment and recommendation. The record of proceedings should include:

(a) The ARB's conclusion regarding the threat posed by the enemy combatant;

(b) The supporting reasons for the threat conclusion, including but not limited to a summary of information relied upon in reaching that conclusion;

(c) Any other reasons that the continued detention of the enemy combatant does or does not remain in the interest of the United States and its allies; and

(d) The ARB's recommendation and the supporting reasons for the recommendation.

(8) The DMO will forward the record of proceedings to the ARB panel, which will review the record, sign it, and submit it to the DCO, via OARDEC, following the conclusion of the ARB's session(s). The record of proceedings may be classified or unclassified, depending upon the nature and classification of the information contained therein.

Encl (9)

## Sample Classified Summary to the Administrative Review Board

ISN:
Name:
Aliases:
Country of Origin:

**Brief Summary**:  A synopsis of relevant information to include how and under what circumstances the enemy combatant was captured and the basis for his detention.

**Military Commission Potential**:  An assessment regarding whether the enemy combatant could potentially be subject to the President's Military Order of November 13, 2001, for possible trial by military commission.

DoD Recommendation:  Recommendation by OSD Detainee Affairs to release, transfer, or continue detaining the enemy combatant.

CDR, USSOUTHCOM Assessment:  Includes threat assessment, enemy combatant's intelligence value, and a recommendation to the Department of Defense to release, transfer, or continue detaining the enemy combatant.  CDR, JTF GTMO's assessment of the enemy combatant's intelligence value is an enclosure to CDR, USSOUTHCOM's assessment and recommendation.

**Threat Assessment Criminal Investigation Task Force (CITF)**:  A characterization of the enemy combatant's potential to do harm to the U.S. and its allies.

**Home State information**:  [provided by DoS]

**Information from other relevant U.S. government agencies**:  [letter is sent from OARDEC and tracked by the DMO for response]

Encl (9)

## Sample Unclassified Summary
### (For Assisting Military Officer and Enemy Combatant)

Name:
Aliases:
Country of Origin:

**Summary:**

Includes, but is not limited to, the following facts:
- Where was the enemy combatant captured?
- Who does the enemy combatant associate with (or not) that potentially makes him a continued threat (or not a continued threat)?
- What organizations or movements does the enemy combatant participate in (or not) that make him a continued threat?
- Information from the enemy combatant's relatives.
- Other relevant data.

**Notification:**

You are hereby notified an Administrative Review Board session will occur on [date] to make a recommendation on whether you should continue to be detained, transferred, or released. You are invited to present any relevant information to the Administrative Review Board. The Assisting Military Officer is assigned to help you prepare your information for the board, if desired. The Assisting Military Officer may also make a presentation to the ARB on your behalf, if desired.

## Assisting Military Officer Qualifications, Roles, and Responsibilities

1. The role and duties of the Assisting Military Officer (AMO) are described in reference (a). Further guidance is provided below:

a. Qualifications of AMO.

(1) For each case, the ARB shall select an AMO from a pool of military officers designated by the DCO in writing. Individuals assigned to serve as AMOs shall be those who are, in the DCO's view, qualified for the duty by reason of education, training, experience, length of service, temperament, and objectivity.

(2) AMOs shall carry a service grade of O-4 or higher, and shall be selected from among all the military services.

(3) AMOs must have a minimum security clearance of TOP SECRET.

(4) AMOs shall not be Judge Advocates or Chaplains. AMOs shall not be involved in cases in which they previously had a principal role in the CSRT process (i.e., Tribunal member, Personal Representative, or Recorder) or any role in a military commission for the same enemy combatant.

b. Role of the AMO.

(1) The AMO shall assist the enemy combatant in reviewing all relevant and reasonably available unclassified information, preparing for and presenting information to the ARB. The AMO is not an advocate for or against the continued detention of the enemy combatant under review.

(2) The AMO has a duty to present to the ARB all relevant and reasonably available information in the AMO's possession with regard to the existence or absence of any potential threat posed by the enemy combatant under review.

(3) The AMO shall have due regard for classified information and safeguard it in accordance with applicable instructions and regulations. The AMO shall coordinate with an Information Security Officer (ISO) in the safeguarding of classified material during the ARB process.

c. Responsibilities of the AMO.

(1) The AMO is responsible for explaining the nature of the ARB process to the enemy combatant. Upon first contact with the enemy combatant, the AMO will explain to the enemy combatant that no confidential relationship exists or may be formed between the enemy combatant and the AMO. The AMO will explain the enemy combatant's opportunity to make a personal appearance before the ARB with the AMO. The AMO shall request a translator, if needed, to aid the enemy combatant in making such appearance and in preparing his

Encl (10)

presentation. The AMO will explain to the enemy combatant that if he elects to make a personal appearance, then he may be subject to questioning by the ARB members, but he cannot be compelled to make any statement or answer any questions. If the enemy combatant waives a personal appearance, then the AMO will note that fact on an "Enemy Combatant Election Form," a sample of which is provided at page 4 of this enclosure. Paragraph 2, below, provides guidelines for the AMO meeting(s) with the enemy combatant prior to his appearance before the ARB.

(2) The AMO will review information and documentation that the DMO provides the AMO.

(3) The AMO will ensure that the enemy combatant has been provided the unclassified written summary prepared by the DMO and that the summary is in a language the enemy combatant understands.

(4) Using the guidelines set forth in Paragraph 2, below, the AMO will meet with the enemy combatant, using a translator if necessary, in advance of the ARB. Under no circumstance will the AMO disclose classified information to the enemy combatant.

(5) The AMO will ensure that coordination is maintained with Joint Task Force-Guantanamo Bay and the CITF with respect to contact with the enemy combatant.

(6) If the enemy combatant elects, the AMO will present information to the ARB on the enemy combatant's behalf. The enemy combatant may elect AMO assistance in addition to or in lieu of the enemy combatant's personal appearance at the ARB proceeding. The AMO may, outside the presence of the enemy combatant, comment upon classified information submitted by the DMO that bears upon the enemy combatant's presentation, if it would aid the ARB's deliberations.

(7) The AMO shall answer questions, if any, asked by the ARB.

2. AMO Guidelines for Assisting the Enemy Combatant. The AMO will use these guidelines to assist the enemy combatant in preparing for the ARB:

AMO: An administrative review process has been established by our government to annually review the detention of all the enemy combatants here.

A board of military officers will review your case in "x" number of days. I have been assigned to ensure you understand this process. The board will review your case file, offer you an opportunity to speak on your own behalf if you desire, and ask questions. We have asked your country and your family to provide statements. Following the ARB proceeding, the panel will recommend whether you should continue to be held, transferred, or released.

I am to ensure you have seen or heard the summary of your case and understand it, and assist your preparation of an oral or written presentation to the panel should you desire to do so. I am also available to speak on your behalf at the ARB if you wish.

I am neither a lawyer nor your advocate, but have been given the responsibility of assisting your preparation for the ARB. None of the information we discuss will be held in confidence and I will discuss our meeting at the ARB.

Do you understand the process or have any questions about it?

Here is the summary of the information the board is using to determine your case.

(AMO either reads the unclassified summary, lets the enemy combatant read it, or has the translator read it to the enemy combatant.)

Do you understand or have any questions about the summary?

Do you wish to present information to the board or participate in any way?

(If the enemy combatant says no, state the following.)
I ask that you formally decline your participation in the ARB process. Please write a statement declining participation and sign it.

This meeting is concluded.

(If the enemy combatant says yes, continue with the following)

Here are some things you may want to consider for your statement to the ARB:

1. Aspects of your capture.

2. Your record of behavior since you have been here.

3. Any plans or goals for the future you may have should you be released.

4. Explain why you are not a threat to the United States or its allies, and your willingness to make a statement to that effect

5. Explain any other reasons why you believe you should no longer be detained here.

6. Questions you have for the board.

I will meet with you shortly before the ARB to discuss any further issues, and will be present with you at the meeting.

Do you have any further questions?

## Sample Enemy Combatant Election Form

Date/Time: _____

ISN#: _____

Assisting Military Officer: _____
[Name/Rank]

Translator Required? _____          Language? _____

ARB Procedures Read to Enemy Combatant or Written Copy Read by Enemy
Combatant?_____
-------------------------------------------------------------------------------------------
Enemy Combatant Election:

☐ Wants to Appear Personally in ARB Proceedings

☐ Wants Assistance of Assisting Military Officer

☐ Affirmatively Declines to appear personally in ARB Proceedings (if possible, have Enemy
Combatant sign a statement indicating his desire not to appear and append that statement, and its
English translation, to this form).

☐ Uncooperative or Unresponsive

Assisting Military Officer Comments:
_____
_____
_____
_____

_____
**Assisting Military Officer**

4                                             Encl (10)

## Administrative Review Board Transcript Guide

DMO:               All rise. (The ARB enters)

[In ARB sessions where the Enemy Combatant (EC) has waived appearing before the ARB, the ARB can generally omit the *italicized* portions.]

Presiding Officer (PO):       This ARB session shall come to order.

DMO:               This Administrative Review Board is being conducted at [Time/Date] U.S. Naval Base Guantanamo Bay, Cuba. The following personnel are present:

_____, Presiding Officer

_____, Member

_____, Member

_____, Assisting Military Officer

_____, *Translator*

_____, Board Reporter/Paralegal

_____, Designated Military Officer

[Rank/Name] is the member of the ARB experienced in the field of intelligence.

PO:                The DMO will be sworn.  Do you, (Rank/Name of the DMO), swear (or affirm) that you will faithfully perform the duties of a Designated Military Officer in this Administrative Review Board proceeding (so help you God)?

DMO:               I do.

PO:                The board reporter/paralegal will now be sworn.

DMO:               Do you, (Rank/Name of board reporter/paralegal), swear (or affirm) that you will faithfully perform the duties of a reporter/paralegal in this Administrative Review Board proceeding (so help you God)?

BOARD REPORTER/PARALEGAL:  I do.

*PO:                The translator will now be sworn.*

*DMO:               Do you, (Name of the translator); swear (or affirm) that you will faithfully perform the duties of translator in this Administrative Review Board proceeding (so help you God).*

Encl (11)

TRANSLATOR:    *I do.*

PO:    *We will take a brief recess while the enemy combatant is brought into the room.*

DMO:    *All rise.*

*[ARB members depart, followed by the DMO, AMO, Translator, and Board Reporter. The enemy combatant is brought into the room. All participants except the ARB members return to the ARB room.]*

DMO: All rise. [The ARB members enter the room.]

TRANSLATOR:    *(TRANSLATION OF ABOVE).*

PO:    This ARB session will come to order.  You may be seated.

TRANSLATOR:    *(TRANSLATION OF ABOVE).*

PO:    *(Name of enemy combatant), this Administrative Review Board proceeding is convened by the Designated Civilian Official under the provisions of his Order xx of August xx, 2004.  It will determine whether you should continue to be detained, transferred, or released from custody of the United States.*

TRANSLATOR:    *(TRANSLATION OF ABOVE).*

PO:    This ARB shall now be sworn. All rise.

TRANSLATOR:    *(TRANSLATION OF ABOVE).*

[All persons in the room stand while DMO administers the oath.  Each voting member raises his or her right hand as the DMO administers the following oath:]

DMO:    Do you swear (or affirm) that you will faithfully perform your duties as a member of this Administrative Review Board; that you will impartially examine and inquire into the matter now before you according to the orders, rules and regulations provided; that you will make such assessments and recommendations as are supported by the information presented; that in making your assessments and recommendations, you will use your professional knowledge, best judgment, and common sense; and that you will make such assessments and recommendations as are appropriate according to the best of your understanding of the orders, rules and regulations governing this proceeding (so help you God)?

TRANSLATOR:    *(TRANSLATION OF ABOVE).*

MEMBERS OF ARB.  I do.

TRANSLATOR:        *(TRANSLATION OF ABOVE).*

PO:                The DMO will now administer the oath to the AMO.

TRANSLATOR:        *(TRANSLATION OF ABOVE).*

[The ARB members lower their hands but remain standing while the following oath is administered to the AMO:]

DMO:               Do you swear (or affirm) that you will faithfully perform the duties of Assisting Military Officer in this Administrative Review Board (so help you God)?

TRANSLATOR:        *(TRANSLATION OF ABOVE).*

AMO:               I do.

PO:                Please be seated.  The Designated Military Officer, Board reporter/paralegal, *and Translator* have previously been sworn.  This Administrative Review Board session shall come to order.

[All personnel resume their seats.]

TRANSLATOR:        *(TRANSLATION OF ABOVE).*

PO:                *(Name of enemy combatant), you are hereby advised that the following applies during this session:*

TRANSLATOR:        *(TRANSLATION OF ABOVE).*

PO:                *The purpose of this Administrative Review Board proceeding is to gather and review information so as to make an assessment of whether you continue to pose a threat to the United States or its allies in the ongoing armed conflict against al Qaida and its affiliates and supporters or whether there are other factors bearing upon the need for continued detention.*

TRANSLATOR:        *(TRANSLATION OF ABOVE).*

PO:                *This session is your opportunity to be heard and to present information to the Administrative Review Board favoring why you are no longer a threat to the United States and its allies, why it is otherwise appropriate for you to be released, and any other relevant information you wish us to consider.*

TRANSLATOR:        *(TRANSLATION OF ABOVE).*

PO:                *You may have the assistance of an Assisting Military Officer (also referred to as an AMO) at the session.  Your assigned AMO is present.*

TRANSLATOR:    *(TRANSLATION OF ABOVE).*

PO:    *Prior to this session, you should have been provided notice of this ARB session and provided a written summary of the primary factors favoring your continued detention and the primary factors favoring your release or transfer. Were you provided notice and a written summary from the AMO?*

TRANSLATOR:    *(TRANSLATION OF ABOVE).*

EC:    *(Responds)*

TRANSLATOR:    *(TRANSLATION OF ABOVE).*

PO:    *You may be present at this open session of the Administrative Review Board. However, if you become disorderly, you will be removed from the session, and the Administrative Review Board will continue in your absence.*

TRANSLATOR:    *(TRANSLATION OF ABOVE).*

PO:    *You may not be compelled to make a statement at this ARB. However, you may provide information if you wish to do so. Your statement can be under oath or you can provide an unsworn statement. You may also choose to have the AMO provide a statement on your behalf.*

TRANSLATOR:    *(TRANSLATION OF ABOVE).*

PO:    *Members of the Review Board may question you during this session but you are not required to answer their or my questions.*

TRANSLATOR:    *(TRANSLATION OF ABOVE).*

PO:    *Do you understand this process?*

TRANSLATOR:    *(TRANSLATION OF ABOVE).*

EC:    *(Responds)*

TRANSLATOR:    *(TRANSLATION OF ABOVE).*

PO:    *Do you have any questions concerning the Administrative Review Board proceedings?*

TRANSLATOR:    *(TRANSLATION OF ABOVE).*

EC:    *(Responds)*

TRANSLATOR:    *(TRANSLATION OF ABOVE).*

Encl (11)

[In ARB sessions where the enemy combatant has waived participation substitute:

PO:             [Rank/Name of AMO], you have advised the ARB that [Name of enemy
                combatant] has elected to not participate in this ARB proceeding. Is that still
                the situation?

AMO:            Yes/No. [Explain].

PO:             Please provide the ARB with the Enemy Combatant Election Form marked
                as Exhibit EC-a.

[Presentation of Unclassified Information by DMO and the enemy combatant or his AMO.
DMO information shall be marked in sequence DMO-1, DMO-2, etc. while information
presented for the enemy combatant shall be marked in sequence EC-a, EC-b, etc.]

*[The Translator shall translate as necessary during this portion of the ARB.]*

PO:             DMO, please provide the ARB with the unclassified information.

DMO:            I am handing the ARB what has previously been marked as Exhibit DMO-1,
                the unclassified summary of the primary factors favoring continued detention
                of the enemy combatant and of the primary factors favoring his release or
                transfer. A translated copy of this exhibit was provided to the AMO in
                advance of this session for presentation to the enemy combatant. In addition,
                I am handing the ARB the following unclassified exhibits, marked as
                Exhibit DMO-2 through DMO-x. Copies of these Exhibits have previously
                been provided to the AMO.

DMO:            Mr./Madam Presiding Officer, I have no further unclassified information for
                the ARB but request a closed ARB session at an appropriate time to present
                classified information relevant to the determination as to whether this enemy
                combatant should be detained, transferred, or released.

*PO:*           *[Name of enemy combatant] (or AMO), do you (or does the enemy
                combatant) want to present information to this ARB?*

*TRANSLATOR:*   *(TRANSLATION OF ABOVE).*

[If enemy combatant is not present, AMO may present information to the ARB.]

*[If the enemy combatant elects to make an oral statement:]*

*PO:*           *[Name of enemy combatant] would you like to make your statement under
                oath?*

*TRANSLATOR:*   *(TRANSLATION OF ABOVE).*

*EC:*           *(Responds)*

Encl (11)

TRANSLATOR:    (TRANSLATION OF ABOVE).

### *Form of Oath for a Muslim*

*Do you [Name], in the Name of Allah, the Most Compassionate, the Most Merciful, swear that your testimony before this ARB will be the truth?*

### *Form of Oath or Affirmation for Others*

*Do you (swear) (affirm) that the statements you are about to make shall be the truth, the whole truth, and nothing but the truth (so help you God)?*

TRANSLATOR:    (TRANSLATION AS NECESSARY).

*[After statement is completed:]*

PO:    *[Name of enemy combatant], does that conclude your statement?*

TRANSLATOR:    (TRANSLATION OF ABOVE).

EC:    *(Responds)*

TRANSLATOR:    (TRANSLATION OF ABOVE).

PO:    *[Determines whether ARB members, DMO, or AMO have any questions for enemy combatant.]*

PO:    *[Name of enemy combatant] do you have any other information to present to this ARB?*

TRANSLATOR:    (TRANSLATION OF ABOVE).

PO:    All unclassified information having been provided to the ARB, this concludes this ARB open session.

TRANSLATOR:    (TRANSLATION OF ABOVE).

PO:    *(Name of enemy combatant), you shall be notified of the determination on your continued detention upon completion of these review proceedings and a decision by the Designated Civilian Official in Washington, D.C.*

TRANSLATOR:    (TRANSLATION OF ABOVE).

PO:    *If the Designated Civilian Official determines that you should no longer be detained by the United States, you will be released or transferred to your home country or another country as soon as arrangements can be made.*

TRANSLATOR:    (TRANSLATION OF ABOVE).

Encl (11)

PO:                 *If the Designated Civilian Official determines that you should continue to be detained, you shall be eligible for another Administrative Review Board in one year.*

TRANSLATOR:    *(TRANSLATION OF ABOVE).*

PO:                 This ARB open session is adjourned.

DMO:              All rise. [If moving into ARB session in which classified material will be discussed add:] This ARB is commencing a closed session. Everyone but the ARB members, the AMO, the board reporter/paralegal and myself will leave the ARB room.

PO:                 [When ARB room is ready for closed session.] You may be seated. The ARB for [Name of enemy combatant] is now reconvened without the enemy combatant being present to prevent a potential compromise of national security due to the classified nature of the information to be considered. The DMO will note the date and time of this session for the record.

[The closed ARB session commences, as necessary, with only properly cleared personnel present. Presentation of classified information by DMO and, when appropriate, AMO. All information will be properly marked with an appropriate security classification.]

PO:                 This ARB session is adjourned and the ARB is closed for deliberations and voting.

DMO:              [Notes time and date when ARB adjourns.]

## Sample Assessment and Recommendation Letter



Department of Defense
Office for the Administrative Review of the Detention
of Enemy Combatants at
U.S. Naval Base Guantanamo Bay, Cuba

Ser

**[CLASSIFICATION]**

From: (Presiding Officer of the Administrative Review Board)
To:    Designated Civilian Official
Via:   Director, OARDEC

Subj:  RECORD OF PROCEEDINGS FOR THE ADMINISTRATIVE REVIEW OF
       THE DETENTION OF ENEMY COMBATANT (ISN#)

Ref:   (a) (Implementation Order)
       (b) Deputy Secretary of Defense Order OSD 06942-04 of May 11, 2004
       (c) Deputy Secretary of Defense Memo of June 4, 2004

Encl:  (1) U.S. Army; CITF Assessment
       (2) CDR, USSOUTHCOM Assessment (includes CDR, JTF GTMO's assessment)
       (3) Other Government Exhibits
       (4) Record of proceedings of ARB Session with Enemy Combatant (ISN#)
       (5) Enemy Combatant Election Form
       (6) Information provided to the ARB by another federal agency or State or enemy
       combatant and not considered relevant to the proceedings (if applicable)
       (7) ARB minority assessment and recommendation (if applicable)

1. Per references (a) through (c), an Administrative Review Board (ARB) was conducted in the
case of [Name], [ISN #] on (date).

2. The members of the ARB for (ISN #) were:

Presiding Officer (PO)  (name)
Member (name)
Member (name)
Designated Military Officer (name)
Assisting Military Officer (name)
Translator (name)

**[CLASSIFICATION]**

**[CLASSIFICATION]**

Encl (12)

**[CLASSIFICATION]**

3. DoD recommendation (insert text). CDR, USSOUTHCOM assessed (ISN#) as (high/medium/low threat) due to (insert text), assessed detainee's intelligence value as (insert text), and recommended (insert text). The U.S. Army (i.e., CITF) assessed (ISN#) as (high/medium/low threat) due to (insert text). Other government agency assessments are as follows:

      a. DoJ:_____
      b. DoS:_____
      c. DHS:_____
      d. CIA:_____
      e. (*Note: If an agency does not provide a response it should be noted as: "No Formal Assessment"*)

4. Based on the above, the ARB assessed (EC name/ISN) to be high/medium/low threat due to _____ (*include a concise basis for the decision to include all relevant factors considered*).

5. In addition to, or in spite of, the threat assessment, the ARB considered the following factors to weigh in favor of the further detention of the enemy combatant (list factors, e.g., the fact that the enemy combatant is being considered for trial by Military Commission, continuing intelligence value, etc.).

6. The recommendation of the ARB is to release/ transfer (with the following suggested conditions: _____[if applicable])/continue to detain, on an x to y vote of the ARB. Enclosures (1) through (7) pertain.

(*Note: If the vote is not unanimous, include paragraph 7 to provide the minority assessment and recommendation*)

7. As presented in enclosure (7), the dissenting board member's recommendation is to release/ transfer (with the following conditions: _____[if applicable])/continue to detain due to_ _____.

                //s//
                Name
                Rank, Component
                Presiding Officer

                               **[CLASSIFICATION]**

Encl (12)